DENNIS J. HERRERA, State Bar #139669
City Attorney
ANDREW SHEN, State Bar #232499
TARA M. STEELEY, State Bar #231775
JENICA MALDONADO, State Bar #266982
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-4655
Facsimile:     (415) 554-4699
E-Mail:        tara.steeley@sfcityatty.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YES ON PROP B, COMMITTEE IN SUPPORT OF THE EARTHQUAKE SAFETY AND EMERGENCY RESPONSE BOND and TODD DAVID, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendant. | Case No. 3:20-cv-00630 CRB <br><br> **DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date:  February 14, 2020 <br> Time:          10:00 a.m. <br> Judge:         Judge Charles R. Breyer <br> Place:         Courtroom 6, 17th Floor <br>                450 Golden Gate Avenue <br>                San Francisco, CA <br><br> Trial Date:    None set. <br><br> Attachments: <br> --Declaration of Patrick Ford <br> --Request for Judicial Notice <br> --[Proposed] Order |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

SUMMARY OF ARGUMENT ........................................................................................... vi

FACTUAL BACKGROUND ................................................................................................. 1

    I.      THE SPOKEN DISCLAIMER RULE ................................................................. 1

    II.     PROPOSITION F ................................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 3

LEGAL STANDARD ............................................................................................................. 3

ARGUMENT ........................................................................................................................... 4

    I.      PROPOSITION F'S DISCLAIMER REQUIREMENTS ARE CONSTITUTIONAL WITH RESPECT TO PLAINTIFFS' NEWSPAPER ADS 5 BY 10 INCHES OR LARGER, PALM CARDS, AND OTHER ADVERTISEMENTS WHERE THE DISCLAIMER TAKES 40% OR LESS OF THE ADVERTISEMENT. ................................................................................. 4

          A.    PROPOSITION F'S DISCLAIMER REQUIREMENTS SHOULD BE EVALUATED UNDER THE EXACTING SCRUTINY STANDARD ..... 4

          B.    PROPOSITION F'S DISCLAIMER REQUIREMENTS SATISFY EXACTING SCRUTINY AS APPLIED TO PLAITIFFS' LARGE FORMAT ADVERTISEMENTS. ............................................................. 6

               1.    The City Has A Sufficiently Important Governmental Interest In Providing The Electorate With Information About The Sources Of Election-Related Spending. ......................................................... 6

               2.    Proposition F's Disclaimer Requirements Are Substantially Related To The City's Important Interest In Providing Information To The Voters. ......................................................... 7

                    a.    The Required Disclaimers Do Not Take Too Much Space On Plaintiffs' Large Format Advertisements ...................... 8

                    b.    The Secondary Contributor Rule Advances the City's Important Governmental Interests. ................................... 11

                        i.     Proposition F does not burden association rights. . 12

                        ii.    Proposition F does not impermissibly chill fundraising. ......................................................... 16

                        iii.   Secondary contributor disclaimer requirement provides useful information to the voters. ............. 17

    II.     THE "SPOKEN DISCLAIMER" REQUIREMENT ENACTED BY THE BOARD OF SUPERVISORS IS CONSTITUTIONAL. ................................... 19

    III.   THE REMAINING EQUITABLE FACTORS FAVOR THE CITY ................... 20

    IV.   PLAINTIFFS ARE NOT ENTITLED TO THE REMEDY THEY SEEK. .......... 22

CONCLUSION.................................................................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

**Federal Cases**

*Alaska Right To Life Comm. v. Miles*
    441 F.3d 773 (9th Cir. 2006) ...................................................................12

*Am. Civ. Liberties Union of Nevada v. Heller*
    378 F.3d 979 (9th Cir. 2004) ...........................................................11, 12

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*
    559 F.3d 1046 (9th Cir.2009) ...................................................................3

*American Beverages Association v. City and County of San Francisco*
    916 F.3d 749 (9th Cir. 2019) ............................................................v, 9, 10

*Amoco Prod. Co. v. Village of Gambell*
    480 U.S. 531 (1987) ...................................................................................3

*Buckley v. Valeo*
    424 U.S. 1 (1976) .......................................................................5, 6, 7, 16

*California Pro-Life Council, Inc. v. Getman*
    328 F.3d 1088 (9th Cir. 2003) ....................................................... *passim*

*California Republican Party v. Fair Political Practices Commission*
    2004 U.S. Dist. LEXIS 22160 (E.D. Cal. October 27, 2004) ...................15

*Citizens Union of City of New York v. Atty. Gen. of New York*
    408 F. Supp. 3d 478 (S.D.N.Y. 2019) ......................................................19

*Citizens United v. Fed. Election Comm'n*
    558 U.S. 310 (2010) ...................................................................... *passim*

*Ctr. for Individual Freedom, Inc. v. Tennant*
    706 F.3d 270 (4th Cir. 2013) ...................................................................10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
    509 U.S. 579 (1993) .................................................................................15

*Davis v. Federal Election Comm'n*
    554 U.S. 724 (2008) ...................................................................................5

*Doe v. Harris*
    772 F.3d 563 (9th Cir. 2014) ...................................................................21

*Fam. PAC v. McKenna*
    685 F.3d 800 (9th Cir. 2012) ........................................................ *passim*

*Fed. Trade Comm'n v. Affordable Media, LLC*
    179 F.3d 1228 (9th Cir. 1999) .................................................................21

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*First National Bank of Boston v. Bellotti*
  435 U.S. 765 (1978)............................................................................7

*Fund For Animals, Inc. v. Lujan*
  962 F.2d 1391 (9th Cir. 1992)...........................................................21

*Human Life of Washington Inc. v. Brumsickle*
  624 F.3d 990 (9th Cir. 2010) ..................................................... *passim*

*Iowa Right to Life Comm., Inc. v. Tooker*
  133 F. Supp. 3d 1179 (S.D. Iowa 2015) ...............................................9

*Janus v. American Federation of State, County, and Municipal Employees*
  138 S. Ct. 2448 (2018)......................................................................13

*John Doe No. 1 v. Reed*
  561 U.S. 186 (2010)............................................................................5

*Klein v. City of San Clemente*
  584 F.3d 1196 (9th Cir. 2009) ............................................................3

*McConnell v. Fed. Election Commn.*
  251 F. Supp. 2d 176 (D.D.C. 2003) ..................................................16

*McConnell v. Fed. Election Commn.*
  540 U.S. 93 (2003) ..................................................................... *passim*

*Mesfun v. Hagos*
  CV 03-02182 MMM(RNBX, 2005 WL 5956612 (C.D. Cal. Feb. 16, 2005) ..........................15

*Natl. Ass'n of Mfrs. v. Taylor*
  549 F. Supp. 2d 33, 55 (D.D.C. 2008),
  aff'd, 582 F.3d 1 (D.C. Cir. 2009).....................................................11

*Nixon v. Shrink Mo. Gov't PAC*
  528 U.S. 377 (2000)..........................................................................10

*Planned Parenthood of Blue Ridge v. Camblos*
  116 F.3d 707 (4th Cir. 1997) ............................................................21

*ProtectMarriage.com v. Bowen*
  599 F. Supp. 2d 1197 (E.D. Cal. 2009) .............................................12

*Tashjian v. Republican Party of Connecticut*
  479 U.S. 208 (1986)..........................................................................14

*U.S. v. Bighead*
  128 F.3d 1329 (9th Cir. 1997) ..........................................................15

*Washington State Grange v. Washington State Republican Party*
  552 U.S. 442 (2008).................................................................. *passim*

*Weinberger v. Romero–Barcelo*
    456 U.S. 305 (1982) ...................................................................................21

*Winter v. Natural Res. Def. Council*
    555 U.S. 7 (2008) .................................................................................3, 21

*Yamada v. Kuramoto*
    744 F. Supp. 2d 1075 (D. Haw. 2010) ............................................... vi, 23

*Zauderer v. Office of Disciplinary Counsel of S. Ct. of Ohio*
    471 U.S. 626 (1985) .............................................................................9, 10

**Constitutional Provisions**
U.S. Const., amend. I ....................................................................... *passim*

**Federal Statutes**
26 U.S. Code
    § 501(c)(3) ................................................................................................19
    § 501(c)(4) ................................................................................................19

**State Statutes & Codes**
Cal. Gov. Code
    § 84504(a) ................................................................................................20
    § 84504.4(a) .............................................................................................20
    § 84504.5(a) .............................................................................................20

**San Francisco Statutes, Codes & Ordinances**
S.F. Camp. & Gov. Code
    § 1.161 .................................................................................................1, 22
    § 1.161(a)(5) .......................................................................................19, 22

**Rules**
Fed. R. Evid. 802 ........................................................................................17

**Other References**
Joe Kukura, *Tons of Super PAC Cash Enters Supervisor Races*, SFWeekly (9/27/2018), available at https://www.sfweekly.com/news/tons-of-super-pac-cash-enters-supervisor-races/ .................11

Joshua Sabatini, *Voters to decide on increased campaign finance disclosures, new limits on contributions*, SF Examiner (7/15/2019),
    available at https://www.sfexaminer.com/the-city/voters-to-decide-on-increased-campaign-finance-disclosures-new-limits-on-contributions/ ...............................................................11

**SUMMARY OF ARGUMENT**

Proposition F, which San Francisco voters overwhelmingly approved at the November 2019 election, seeks to shine a light on political spending in San Francisco. To make it harder for political action committees to hide behind misleading or uninformative names to obscure their true funding sources, Proposition F requires committees to include more prominent disclaimers as part of their campaign advertisements, and to disclose both their direct contributors and the major donors to those contributors in their advertisements. That "secondary contributor" requirement allows voters to follow the money, and gives the voters fuller and better information as to who is behind the campaign ads that inundate their mailboxes, social media feeds and newspapers in the run-up to an election.

Plaintiffs ask the Court to enjoin Proposition F's disclaimer requirements in their entirety, but Plaintiffs are not entitled to the relief they seek. First of all, Plaintiffs have not shown that Proposition F is unconstitutional when applied to many of Plaintiffs' advertisements, including Plaintiffs' newspaper advertisement sized 5" by 10" or larger, and their palm cards, window signs, and other advertisements, where the required disclaimers would occupy less than 40% of the advertisement. The Supreme Court upheld a disclaimer that took 40% of the advertisement in *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 368 (2010), and Plaintiffs offer no reason for this Court to depart from that holding. Plaintiffs rely heavily on the Ninth Circuit's opinion in *American Beverages Association v. City and County of San Francisco*, 916 F.3d 749 (9th Cir. 2019), but that case – which involved consumer product advertising, not political campaign advertising – is easily distinguishable. In *American Beverages*, the Ninth Circuit applied a different standard of review, considered a compelled warning on commercial speech rather than an election law disclaimer requirement, and considered the burden that can arise when the government seeks to compel a warning that advertisers claim will conflict with their message and undermine demand for their product. Proposition F's disclaimer requirements are controlled by *Citizens United*, not *American Beverages.*

Plaintiffs also are not likely to succeed on their challenge to Proposition F's "secondary contributor" requirement. Plaintiffs boldly argue that they should not be required to disclose that they received funding from United Democratic Club of San Francisco and that it received money from the Association of Realtors, because the Association of Realtors is unpopular with San Francisco's

1   progressive voters.  But a desire to hide unpopular donors is not an interest protected by the First

2   Amendment.  To the contrary, an unbroken line of cases recognizes the importance of providing donor

3   information to the voters so that they can know who is speaking in the advertisement and evaluate the

4   credibility of the speech.  *Fam. PAC v. McKenna*, 685 F.3d 800, 806 (9th Cir. 2012); *Human Life of*

5   *Washington Inc. v. Brumsickle*, 624 F.3d 990, 1005 (9th Cir. 2010); *California Pro-Life Council, Inc.*

6   *v. Getman*, 328 F.3d 1088, 1105–06 (9th Cir. 2003).  Plaintiffs speculate that voters may be confused

7   by Proposition F's secondary disclosures, but Plaintiffs offer no evidence to show that voters will be

8   confused by the requirements they overwhelmingly approved just a few months ago.  Plaintiffs'

9   speculation about voter confusion should be rejected.  *Washington State Grange v. Washington State*

10  *Republican Party*, 552 U.S. 442, 457 (2008).

11          In addition, Plaintiffs are not entitled to the relief they seek because Plaintiffs have not

12  demonstrated that a "substantial number" of Proposition F's applications are unconstitutional when

13  "judged in relation to the statute's plainly legitimate sweep."  *Washington State Grange*, 552 U.S. at

14  450 n.6;  *Yamada v. Kuramoto*, 744 F. Supp. 2d 1075, 1084 (D. Haw. 2010) (declining to issue facial

15  injunction whether plaintiff failed to provide the factual record needed to allow the court to determine

16  whether a substantial number of other applications of the campaign finance law would be

17  unconstitutional).  Plaintiffs seek an injunction that would flatly bar the City from enforcing

18  Proposition F's disclaimer requirements in all of their applications, but Plaintiffs do not even attempt

19  to show that other committees have faced any unconstitutional burdens because of Proposition F's

20  disclaimer requirements.  To the contrary, other committees are complying with Proposition F's

21  requirements for the March election without any apparent difficulty.  (*See* Declaration of Patrick Ford

22  ¶¶ 1-2, Ex. A.)

23          Although Plaintiffs have overreached in their request for a preliminary injunction, the City

24  recognizes that Proposition F's disclaimer requirements impose some impermissible burdens as

25  applied to some of Plaintiffs' speech.  Therefore, based on the evidence Plaintiffs submitted, the City

26  agrees that the Court should preliminarily enjoin Proposition F as applied to Plaintiffs' proposed 5" by

27  5" newspapers advertisements, smaller "ear" advertisements, and spoken disclaimers on digital/audio

28  advertisements of 30 seconds or less.  In all other respects, the Court should deny Plaintiffs' motion.

# FACTUAL BACKGROUND

Plaintiffs seek a preliminary injunction to prevent enforcement of two requirements in San Francisco's Campaign and Government Code: the "spoken disclaimer rule" and changes enacted by the voters through Proposition F.[1]

## I.    THE SPOKEN DISCLAIMER RULE

In May 22, 2018, the San Francisco Board of Supervisors amended San Francisco Campaign and Government Code Section 1.161 to require that independent expenditure committees and ballot measure committees include a spoken disclaimer in their audio and video advertisements that identify their top three contributors of $10,000 or more.  (Request for Judicial Notice ("RJN") Ex. A.)  The law permitted disclaimers to be spoken at the end of an advertisement.  The amendments to Section 1.161 took affect over a year ago on January 1, 2019, and thus applied during the November 2019 election. Plaintiffs refer to the Board's enactment as the "spoken disclaimer rule."

## II.   PROPOSITION F

On November 5, 2019, San Francisco voters resoundingly approved Proposition F with 76.89% of the vote.  (RJN Ex. B.)  Proposition F, known as the "Sunlight on Dark Money Initiative," sought to increase the "disclosures of the true sources of funds behind campaign ads by Dark Money SuperPACs . . . to help voters understand who is paying for the campaign ads they see in the mail, on television, and online."  (RJN Ex. C at 94.)  To that end, Proposition F provides that:  (1) disclaimer requirements for "primarily formed independent expenditure committees" and "primarily formed ballot measure committees" shall apply to contributors of $5,000 or more; (2) disclosures shall include "both the name of and the dollar amount contributed by each of the top three major contributors of $5,000 or more"; and, (3) if "any of the top three major contributors is a committee, the disclaimer must also disclose both the name of and the dollar amount contributed by each of the top two major contributors of $5,000 or more to that committee."  (RJN Ex. C at 112.)  In addition, as relevant here, Proposition F requires that disclaimers on mass mailings, door hangers, flyers, posters, oversized campaign buttons

---

[1] Like Plaintiffs, the City uses the term "disclaimers" to refer to information on a political advertisement that discloses donor information, and "disclosures" to refer to public reports filed with government entities that include donor information.

or bumper stickers, or print advertisements be printed in at least 14-point, bold font.  With respect to audio and video advertisements, Proposition F requires that disclaimers be "spoken at the beginning" of the advertisement, and provides that the spoken disclaimer does not need to include the dollar amounts of the contributions.[2]  *Id.*

Plaintiffs assert that the Yes on Prop B campaign committee would like to communicate its message to the public using flyer/palm cards, window signs, 10" by 5" newspaper advertisements, 5" by 5" newspapers advertisements, smaller "ear" advertisements, and digital/audio advertisements of 30 seconds or less.  (David Dec. ¶¶ 29, 31-33.)  According to the evidence submitted by Plaintiffs, Proposition F's disclaimer will take the following percentages of Plaintiffs' space on those advertisements:

- Flyer/palm card:  17-19% (35-38% of a single side of the document)
- window sign: 35%
- 10" by 5" newspaper ad: 31-33%
- 5" by 5" newspaper ad: 75-80%
- 4" by 2" ear ad: 100%
- digital video spots of 6 to 15 seconds: 100%
- digital video ads of 30 seconds: 90-93%
- audio or streaming music ads of 6 to 15 seconds: 100%
- audio or streaming music ads of 30 seconds: 50-53%.  (*Id.* ¶¶ 32-33.)

According to Plaintiffs, the disclaimers take that amount of space because Yes on Prop B "accepted three contributions from other committees, and therefore under Proposition F, the top two donors of those committees must be identified on the Committee's disclaimers."  (David Dec. ¶ 30.)  Other committees supporting or opposing ballot measures for the upcoming March 2020 election are complying with Proposition F's requirements without any similar issues.  (Ford Dec. ¶¶ 1-2, Ex. A).

---

[2] Plaintiffs claim that Proposition F also would impose a disclaimer requirement on phone calls made by volunteers at phone banks, but Plaintiffs do not offer any authority to support that claim.  On its face, Proposition F's disclaimer requirements apply to campaign advertisements, not live phone calls made by volunteers. (RJN Ex. C at 112.)

## STATEMENT OF ISSUES TO BE DECIDED

1.      Are Plaintiffs entitled to a preliminary injunction preventing the City from enforcing Proposition F's requirements as applied to Plaintiffs' newspaper advertisements 5" by 10" or larger, palm cards, window signs, and other advertisements, where the required disclaimers would take less than 40% of the advertisement and the Supreme Court upheld a disclaimer that took 40% of the advertisement in *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 368 (2010)?

2.      Are Plaintiffs entitled to a preliminary injunction preventing the City from enforcing Proposition F's secondary contributor disclosure requirement, where that requirement is substantially related to the City's important interest in informing the voters about the entities who are directly and indirectly funding the speech provided in the political advertisement?

3.      Are Plaintiffs entitled to an injunction that would enjoin Proposition F's disclaimer requirements on their face, even though Plaintiffs have not shown that a "substantial number" of Proposition F's applications are unconstitutional, when "judged in relation to the statute's plainly legitimate sweep?"  *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008).

## LEGAL STANDARD

To warrant injunctive relief, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.2009). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987)).  Plaintiffs have the burden to establish each of the elements necessary to obtain injunctive relief.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).  However, the City has the burden of demonstrating the constitutionality of Proposition F's disclaimer requirements.  *Id.*

**ARGUMENT**

**I.    PROPOSITION F'S DISCLAIMER REQUIREMENTS ARE CONSTITUTIONAL WITH RESPECT TO PLAINTIFFS' NEWSPAPER ADS 5 BY 10 INCHES OR LARGER, PALM CARDS, AND OTHER ADVERTISEMENTS WHERE THE DISCLAIMER TAKES 40% OR LESS OF THE ADVERTISEMENT.**

Plaintiffs assert that the Yes on Prop B campaign committee would like to communicate its message to the public using flyer/palm cards, window signs, 10" by 5" newspaper advertisements, 5" by 5" newspaper advertisements, smaller "ear" advertisements, and digital/audio advertisements of 30 seconds or less.  (David Dec. ¶¶ 29, 31-33.)  The City agrees that Plaintiffs are entitled to a preliminary injunction as applied to situations where Proposition F's required disclaimer would consume more than 40% of Plaintiffs' advertisement.  Thus, the City agrees that Plaintiffs are entitled to an injunction as applied to Plaintiffs' 5" by 5" newspapers advertisements, smaller "ear" advertisements, and spoken disclaimers on digital/audio advertisements of 30 seconds or less.  (*Id.*) However, Plaintiffs have not demonstrated a likelihood of success on the merits of their claims with respect to newspaper advertisements 5" by 10" or larger, palm cards, window signs, and any other advertisements (collectively, "large format advertisements").

**A.    PROPOSITION F'S DISCLAIMER REQUIREMENTS SHOULD BE EVALUATED UNDER THE EXACTING SCRUTINY STANDARD.**

Plaintiffs overreach when they argue that Proposition F's disclaimer requirements should be evaluated under strict scrutiny.  Courts generally look favorably upon disclaimer and disclosure requirements for political and campaign spending. *See, e.g., Citizens United*, 558 U.S. at 371 ("disclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way"); *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1008 (9th Cir. 2010) ("Campaign finance disclosure requirements thus advance the important and well-recognized governmental interest of providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace of ideas.").  Given the important purposes they serve and the smaller burden they place on speech when compared to other regulations of campaign activities, the Supreme Court and Ninth Circuit have made clear that disclosure and disclaimer requirements are subject to exacting scrutiny, not strict scrutiny.  *Citizens United*, 558 U.S. at 366–67 (holding disclaimer and disclosure requirements are subjected to "exacting scrutiny"); *John Doe No. 1 v. Reed*,

561 U.S. 186, 196 (2010) (holding that "challenges to disclosure requirements in the electoral context" are reviewed under "exacting scrutiny"); *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) (*per curiam*) (holding disclosure requirements are subject to exacting scrutiny); *Davis v. Federal Election Comm'n*, 554 U.S. 724, 744 (2008) (holding governmental interest in disclosure "must survive exacting scrutiny"); *Fam. PAC v. McKenna*, 685 F.3d 800, 805–06 (9th Cir. 2012) ("Disclosure requirements are subject to exacting scrutiny."); *Brumsickle*, 624 F.3d at 1005 (explaining that "a campaign finance disclosure requirement is constitutional if it survives exacting scrutiny," holding that the Supreme Court has clarified that that disclosure requirements are not subject to strict scrutiny).

Plaintiffs acknowledge, as they must, that the Supreme Court and Ninth Circuit apply the exacting scrutiny standard when evaluating disclosure and disclaimer requirements.  (MPA at 10.) Nonetheless, Plaintiffs ask the Court to not follow those precedents in a "mechanical manner" because, in Plaintiffs' view, Proposition F's disclaimer requirements are too burdensome and operate "more like an expenditure limit."  (MPA at 10.)  Plaintiffs' argument overlooks the obvious fact that while expenditure limits restrict speech, disclaimers and disclosures increase the information available to the voters, enabling them to better evaluate campaign advertisements.  Further, whatever the merits of Plaintiffs' argument might be with respect to Plaintiffs' digital/audio advertisements of 30 seconds or less and newspaper ads smaller than 5" by 10", Plaintiffs' argument fails with respect to the large format advertisements still in dispute between the parties.  With respect to those ads, Proposition F's disclaimer requirements may "burden the ability to speak" as all disclosure and disclaimer requirements do, but they "do not prevent anyone from speaking." *Citizens United*, 558 U.S. at 366–67.  Indeed, "in contrast to expenditure and contribution limitations, 'disclosure requirements— certainly in most applications—appear to be the least restrictive means of curbing the evils of campaign ignorance and corruption that Congress found to exist.'" *Brumsickle*, 624 F.3d at 1003 (quoting *Buckley*, 424 U.S. at 64.)  Therefore, the "exacting scrutiny" standard is the appropriate standard to apply when the Court evaluates Proposition F's disclaimer requirements as applied to Plaintiffs' large format advertisements. *Id.*

### B.   PROPOSITION F'S DISCLAIMER REQUIREMENTS SATISFY EXACTING SCRUTINY AS APPLIED TO PLAITIFFS' LARGE FORMAT ADVERTISEMENTS.

Exacting scrutiny requires that there be a "substantial relation" between Proposition F's disclaimer requirement and a "sufficiently important" governmental interest.  *Citizens United*, 558 U.S. at 366–67.  Proposition F's disclaimer requirements satisfy exacting scrutiny when applied to Plaintiffs' large format advertisements because Proposition F substantially relate to the City's important interest in providing information to the voters.

### 1.   The City Has A Sufficiently Important Governmental Interest In Providing The Electorate With Information About The Sources Of Election-Related Spending.

Proposition F's disclaimer requirements serve the City's important interest in providing the electorate with information about the sources of election-related spending and who is speaking in political advertisements.  (RJN Ex. C at 111 (stating that purposes of San Francisco Campaign Finance Reform Ordinance – which Proposition F amended – include "assisting voters in making informed electoral decisions through increased disclosure . . .").)  Proposition F – also called the Sunlight on Dark Money Initiative – seeks to further that interest by requiring political advertisements to inform the public about "the true source of funds behind campaign ads" and by making that information sufficiently prominent so that it can be read by the voters.  (*Id.* at 94.)

The interests served by Proposition F are certainly important.  "In a republic where the people are sovereign, the ability of the citizenry to make informed choices" in elections is "essential."  *Buckley*, 424 U.S. at 14–15.  Thus, "[p]roviding information to the electorate is vital to the efficient functioning of the marketplace of ideas, and thus to advancing the democratic objectives underlying the First Amendment."  *Brumsickle*, 624 F.3d at 1005.  By "revealing information about the contributors to and participants in public discourse and debate," disclaimer and disclosure "laws help ensure that voters have the facts they need to evaluate the various messages competing for their attention."  *Id.*  Indeed, because "[a]n appeal to cast one's vote a particular way might prove persuasive when made or financed by one source, but the same argument might fall on deaf ears when made or financed by another," disclaimer and disclosure requirements "advance the important and well-

recognized governmental interest of providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace of ideas." *Id.* at 1008.

The need to provide transparency to the voters has repeatedly been recognized as an important – and even a compelling – governmental interest. *Brumsickle*, 624 F.3d at 1005-06; *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1104–05 (9th Cir. 2003) (holding California's interest in providing information to voters is "sufficiently compelling to survive strict judicial scrutiny"). As the Supreme Court explained in *Citizens United*, the increased "transparency" provided by disclosure and disclaimer requirements "enables the electorate to make informed decisions and give proper weight to different speakers and messages." *Citizens United,* 558 U.S. at 371. "[T]he people in our democracy are entrusted with the responsibility for judging and evaluating the relative merits of conflicting arguments. They may consider, in making their judgment, the source and credibility of the advocate." *Bellotti*, 435 U.S. at 791–92. Proposition F's disclaimer requirements gives San Francisco voters the tools they need to make those determinations.

Accordingly, Proposition F's disclaimers provide the electorate with information so that voters can be informed in real time about the person(s) or group(s) that are speaking through the advertisement. By providing voters the information they need to evaluate an advertisement at the same time they see or hear it, Proposition F's disclaimer requirements advance the well-recognized and important governmental interests in having an informed electorate. *Citizens United,* 558 U.S. at 368; *Buckley*, 424 U.S. at 66–67.

### 2. Proposition F's Disclaimer Requirements Are Substantially Related To The City's Important Interest In Providing Information To The Voters.

Likewise, Proposition F's disclaimer requirements as applied to Plaintiffs' large format advertisements are substantially related to the City's interest in providing information to the voters.

Plaintiffs raise two challenges to Proposition F's disclaimer requirements. First, Plaintiffs argue that Proposition F's disclaimer requirements take up too much space. Plaintiffs note that the Yes on Prop B campaign will need to devote 17-19% of their palm cards, approximately 35% of their horizontal window signs, and approximately 31-33% of 5" by 10" newspaper advertisements to the disclaimers required by Proposition F. (David Dec. ¶¶ 32-33.) Second, Plaintiffs argue that the

requirement to disclose "secondary contributors" is not substantially related to the City's

governmental interests.  Both of Plaintiffs' arguments fail under controlling Supreme Court and Ninth

Circuit authority.

> **a.      The Required Disclaimers Do Not Take Too Much Space On Plaintiffs' Large Format Advertisements.**

Plaintiffs' argument that Proposition F's disclaimers take too much space on their advertising

flies in the face of *Citizens United*.  After recognizing the important role disclaimer requirements serve

in providing information to the electorate, the Supreme Court in *Citizens United* upheld a law that

required the plaintiffs to devote four seconds of their ten-second advertisements to spoken disclaimers.

*Citizens United*, 558 U.S. at 368.  Thus, the Supreme Court recognized that disclaimers that take 40%

of advertising space satisfy exacting scrutiny.

The Supreme Court also expressly rejected the same argument that Plaintiffs advance here that

disclaimers amounting to 40% of the advertisement unconstitutionally "decrease[d] both the quantity

and effectiveness of the group's speech."  *Citizens United*, 558 U.S. at 368.  Although all disclaimer

requirements necessarily decrease the available space for a speaker's own message, that burden is not

an *undue* burden given the important role disclaimers play in our electoral system.  As the Supreme

Court and Ninth Circuit have consistently recognized, disclaimers "provide the electorate with

information," and "insure that the voters are fully informed about the person or group who is

speaking."  *Citizens United*, 558 U.S. at 368 (internal quotations and citations omitted); *see also*

*Brumsickle*, 624 F.3d at 1006.  The disclaimers serve that interest more effectively than disclosures

because disclaimers give voters the information they need to evaluate the speaker's message at the

same time they hear or see the message.  Given the "cacophony of political communications through

which California voters must pick out meaningful and accurate messages . . . being able to evaluate

who is doing the talking is of great importance."  *California Pro-Life Council, Inc.*, 328 F.3d at 1105.

Thus, the burden on Plaintiffs from having to devote 17-35% of their advertising space to disclaimers

in their large format advertisements is not an undue burden on their First Amendment rights.  Indeed,

Plaintiffs even admit that the 40% disclaimer upheld in *Citizens United* caused "only a minor intrusion

on plaintiffs' speech."  (MPA at 16.)

Ignoring that the Supreme Court has upheld a disclaimer requirement that took 40% of the advertisement's space, Plaintiffs rest their argument on *American Beverage Association v. City and County of San Francisco* – a commercial speech case that is easily distinguishable.  In *American Beverages*, the Ninth Circuit held that the City could not require sugar sweetened beverage advertisers to devote 20% of their available space to a warning that stated "WARNING: Drinking beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay.  This is a message from the City and County of San Francisco."  *Am. Bev. Assn. v. City and County of San Francisco*, 916 F.3d 749 (9th Cir. 2019).  The Ninth Circuit concluded that San Francisco's health warning should be analyzed under the test from *Zauderer v. Office of Disciplinary Counsel of S. Ct. of Ohio*, 471 U.S. 626, 631 (1985), which provides that a compelled warning on commercial products may be upheld where the warning is "(1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome." *Am. Bev. Assn.*, 916 F.3d at 755-56.  Under that test, the Ninth Circuit concluded that San Francisco had not satisfied its burden to show that a 20% warning was required, where the evidence suggested that a 10% warning would accomplish the City's stated goals.  *Id.* at 757.

*American Beverages* is easily distinguishable from this case.  First of all, *American Beverages* is not an election law case, and Plaintiffs have not cited any authority for the proposition that the holdings from commercial speech cases can be applied in the election law context.  To the contrary, the Supreme Court has consistently recognized the unique nature of campaign and election-related disclosure and disclaimer requirements.  *Citizens United*, 558 U.S. at 422 (recognizing that First Amendment protections applied in "[t]he election context is distinctive in many ways") (Stevens, J. concurring in part and dissenting in part); *Iowa Right to Life Comm., Inc. v. Tooker*, 133 F. Supp. 3d 1179, 1192 (S.D. Iowa 2015) (explaining that "*Citizens United* recognizes the unique nature of campaign and election-related law.")  There is simply no merit to Plaintiffs' contention that disclaimers showing the funding sources for political advertisements can take no more space on political ads than would be allowed for health and safety warnings on commercial speech.  Plaintiffs cite no authority for that proposition, and the City is aware of none.  Indeed, as explained above, the Supreme Court itself approved a disclaimer that took 40% of an advertisement.  *Citizens United*, 558 U.S. at 368.

Second, in *American Beverages*, the City sought to require commercial advertisers to include a warning that the advertisers claimed would compete with their own message and potentially reduce demand for their product.  In that context, the Ninth Circuit concluded that the City had not shown that the warning would not "drown[ ] out" the advertisers' messages and "effectively rule[ ] out the possibility of having [an advertisement] in the first place." *Am. Bev. Assn.*, 916 F.3d at 757.  Here, by contrast, the required disclaimer does not compete with or threaten to undermine Yes on Prop B's message.  Instead, the required disclaimer simply provides information that voters need to allow them to understand who is funding the advertisement.

Finally, *American Beverages* is distinguishable because the Ninth Circuit in that case applied a different legal test with a different purpose from the exacting scrutiny standard applicable here.  As explained above, the *Zauderer* test requires the Court to consider whether a warning is "(1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome." *Am. Bev. Assn.*, 916 F.3d at 755-56.  By contrast, courts evaluate election law disclaimer requirements under the exacting scrutiny test, which requires courts to consider whether there is a "substantial relation" between the disclosure requirement and a "sufficiently important" governmental interest. *Citizens United*, 558 U.S. at 366–67.  The Ninth Circuit's rejection of a 20% commercial warning when applying the *Zauderer* test says nothing about whether the Ninth Circuit would uphold political disclaimers under exacting scrutiny.

Plaintiffs assert that its political speech should receive the fullest protection under the First Amendment; and, of course, that is true.  But Proposition F's disclaimer requirements for large format ads do not undermine or even impose undue burdens on Plaintiffs' speech. *Citizens United*, 558 U.S. at 368.  Instead, Proposition F merely seeks to insure that voters have the information they need to evaluate political ads so that the voters can make an informed choice.  The purposes of the First Amendment are furthered – not hindered – by those disclaimers. *Brumsickle*, 624 F.3d at 1006. [3]

---

[3] There is no merit to Plaintiffs' claim that the Court should strike down Proposition F merely because the Board did not make specific findings concerning the need to increase the size of disclaimers from 12-point to 14-point font. *Ctr. for Individual Freedom, Inc. v. Tennant,* 706 F.3d 270, 283 (4th Cir. 2013) (reversing district court opinion that struck down disclaimer requirement based on lack of findings).  As the Supreme Court has recognized, the "quantum of empirical evidence" required should "vary up or down with the novelty and plausibility of the justification" for the regulation. *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 391 (2000).  Here, the City relies on the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**b.    The Secondary Contributor Rule Advances the City's Important Governmental Interests.**

Plaintiffs also challenge Proposition F's efforts to address "stealth" and "dark money" influences in San Francisco elections.  As courts have repeatedly recognized, "individuals and entities interested in funding election-related speech often join together in ad hoc organizations with creative but misleading names" designed to obscure the interests that support a ballot measure and thus keep valuable information from the voters. *Am. Civ. Liberties Union of Nevada v. Heller*, 378 F.3d 979, 994 (9th Cir. 2004); *see also McConnell v. Fed. Election Commn.*, 540 U.S. 93, 197 n. 23 (2003) (overruled on other grounds by *Citizens United*, 558 U.S. 310).  For instance, in San Francisco, committee names such as "San Franciscans for Change" and "Safe and Clean Sunset" have been used to obscure that funding actually comes from Progress San Francisco, a state political committee which itself is "largely funded by developer and tech interests."[4]  Likewise here, with surprising candor, Plaintiffs admit that they would like to promote Proposition B without the voters learning that Proposition B's supporters obtain funding from the Realtors Association, because Plaintiffs believe that information could influence the voters.  (David Dec. ¶ 21.)  To prevent those efforts to hide information from the voters, Proposition F requires the top three largest donors of the committee paying for the advertisement to disclose their name and the amount contributed to the committee.  If any of the three belong to another committee, they must disclose the top two donors of that committee as well.  (RJN Ex. C.)

Proposition F is substantially related to the City's interest in providing information to the voters about the sources of funding for advertisements.  Because some political action committees engage in the well-recognized tactic of hiding behind "creative," misleading, or uninformative names to hide information from the voters, Proposition F's secondary contributor requirement allows voters

---

well-accepted governmental interest of informing the electorate.  Further, it is certainly plausible – and in fact, it is obvious – that increasing the size of disclaimer text makes the disclaimer easier to read, particularly from a distance.  No particular record is needed to demonstrate that obvious point.  *Natl. Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 33, 55 (D.D.C. 2008), aff'd, 582 F.3d 1 (D.C. Cir. 2009) (rejecting argument that legislative record was not sufficient to uphold law under strict scrutiny, noting that "the Court is unaware of any precedent requiring a particular quantum of legislative record in order to find a measure justified by a compelling government interest.")

[4] *See* https://www.sfexaminer.com/the-city/voters-to-decide-on-increased-campaign-finance-disclosures-new-limits-on-contributions/; see also https://www.sfweekly.com/news/tons-of-super-pac-cash-enters-supervisor-races/.

1   to learn information about the "actual contributors to such groups and thereby provide useful

2   information concerning the interests supporting or opposing a ballot proposition or a candidate."

3   *Heller*, 378 F.3d at 994; *see also Alaska Right To Life Comm. v. Miles,* 441 F.3d 773, 793 (9th Cir.

4   2006) ("[W]e believe that there is a compelling state interest in informing voters who or what entity is

5   trying to persuade them to vote in a certain way."); *Fam. PAC*, 685 F.3d at 806 ("We have repeatedly

6   recognized an important (and even compelling) informational interest in requiring ballot measure

7   committees to disclose information about contributions.").  Indeed, given that initiative campaigns

8   have become a "money game, where average citizens are subjected to advertising blitzes of distortion

9   and half-truths," "[k]nowing which interested parties back or oppose a ballot measure is critical,

10   especially when one considers that ballot-measure language is typically confusing, and the long-term

11   policy ramifications of the ballot measure are often unknown. At least by knowing who backs or

12   opposes a given initiative, voters will have a pretty good idea of who stands to benefit from the

13   legislation."  *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1105–06 (9th Cir. 2003);

14   *see also ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197, 1208 (E.D. Cal. 2009).  Proposition

15   F's secondary contributor requirement provides "critical" information to the voters, while making it

16   more difficult for political committees to evade existing disclaimer requirements by using misleading

17   and uninformative names to hide the truth sources of their funding from the public.  *Id.*; *see also*

18   *McConnell*, 540 U.S. at 197.

19         Despite that substantial relationship, Plaintiffs ask the Court to invalidate Proposition F's

20   "secondary contribution" disclaimer requirement because Plaintiffs claim it forces entities to associate

21   with each other, and will chill donations to Yes on Prop B.  Neither of Plaintiffs' arguments is

22   persuasive.

23                **i.**       **Proposition F does not burden association rights.**

24         First, Proposition F does nothing to force entities to associate with each other.  Individuals,

25   political committees and others remain free to decide to whom they wish to contribute and in what

26   amount.  Proposition F does not compel anyone to give money to support any candidates, ballot

27   measures or any matters of public debate.  Nor does Proposition F force anyone to take a position on

28   any matter at issue before the voters.  Thus, the issues presented in this case are easily distinguishable

from *Janus v. American Federation of State, County, and Municipal Employees*, 138 S. Ct. 2448

(2018). In *Janus,* the Supreme Court concluded that individuals who were not members of the union

could not be compelled to pay money to the union to subsidize the union's speech. *Id.* Here,

Proposition F does not require anyone to donate money to, or associate with, any campaigns. Instead,

Proposition F simply requires political action committees to disclose to voters their sources of funding

– money that was voluntarily given to them by donors and voluntarily received by the committees.

(RJN Ex. C.)

Recognizing that Proposition F does not actually force anyone to involuntarily associate with

anyone else, Plaintiffs contend that Proposition F should be struck down because the voters might

misunderstand the associations that exist. For instance, Plaintiffs assert that voters will ignore that Yes

on Prop B's disclaimer states that the Association of Realtors contributed money to the United

Democratic Club of San Francisco, and will falsely believe that the Association of Realtors donated

money directly to Yes on Prop B. Likewise, Plaintiffs speculate that the voters will falsely assume

that Salesforce gave $300,000 to Yes on Prop B, even though the disclosures clearly state

Salesforce.com gave $300,000 to Yes on A. (MPA at 22.)[5] Plaintiffs' speculation about voter

confusion is insufficient to support their challenge against Proposition F. Indeed, *Washington State*

*Grange v. Washington State Republican Party*, 552 U.S. 442, 457 (2008) forecloses Plaintiffs'

argument.

In *Washington State Grange*, the Supreme Court considered a challenge to a voter- approved

initiative that provided that: candidates for office shall be identified on the ballot by their self-

designated "party preference"; that voters may vote for any candidate; and, that the top two candidates

who obtained the highest vote totals for each office, regardless of party preference, advance to the

general election. The state republican party claimed that the initiative would burden the party's

---

[5] Likewise, there is no merit to Plaintiffs' claim that Proposition F requires Yes on Prop B to "vastly overstate the amount of money it has received." (MPA at 22.) Proposition F requires Yes on Prop B to accurately report that it has received $5,000 from United Democratic Club of San Francisco, $5,000 from Edwin M. Lee Democratic Club Political Action Committee, and $5,000 from Yes on A, Affordable Homes for San Franciscans. (Muir Dec. Ex. 1.) There is nothing misleading or false about that statement. There is no reason to assume that voters will falsely believe that Salesforce.com has given $300,000 to Yes on Prop B, when the disclaimers expressly state that Salesforce.com gave $300,000 to Yes on A. (*Id.*)

associational rights because voters will assume that candidates on the general election ballot are the

nominees of their preferred parties. That misunderstanding, the party claimed, would "compel the

party to associate with candidates they do not endorse, alter the messages they wish to convey, or force

them to engage in counterspeech to disassociate themselves from the candidates and their positions on

the issues." *Washington State Grange*, 552 U.S. at 454. The Supreme Court rejected that argument

because, as here, the argument "rests on factual assumptions about voter confusion," and, in the

absence of evidence, courts should not "assume" that "voters will be misled." *Id.* Indeed, case law

"reflect[s] a greater faith in the ability of individual voters to inform themselves about campaign

issues.'" *Id.* (quoting *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 220 (1986).) The

Supreme Court explained that "[t]here is simply no basis to presume that a well-informed electorate"

will misunderstand information provided, and noted that that conclusion is "especially true here, given

that it was the voters . . . themselves, rather than their elected representatives, who enacted" the

challenged requirements. *Id.* at 454-55.

This case is on all fours with *Washington State Grange*. The voters of San Francisco

resoundingly approved Proposition F, after being informed that the measure would "increase[ ]

disclosures of the true sources of funds behind campaign ads" by requiring disclosure of secondary

contributors. (RJN Ex. C at 94.) There is no reason to presume that the voters did not know what they

were enacting, or to presume that voters will misunderstand the secondary contributor requirement that

they overwhelmingly approved just a few months ago. Plaintiffs' brief does not cite any evidence

showing voter confusion. (MPA at 17-20.) Plaintiffs have not provided any voter surveys, studies of

voter behavior, or any evidence at all to show that voters will actually misunderstand the disclaimers

required by Proposition F. Nor have Plaintiffs come forward with any evidence to show that voters

will assume that the "secondary contributors" have "reached out to endorse the Committee's activity,"

as Plaintiffs claim. (MPA at 18.) The declaration of Margaret Muir includes a single sentence that

states: "In my experience, recipients of campaign communications perceive that a person listed as a

funding source on that communication is associated with the message sought to be conveyed." (Muir

Dec. ¶ 18.) But Ms. Muir's declaration does not establish that her experience as a political consultant

gives her the foundation she would need to offer opinion testimony about whether voters will be

confused by Proposition F's disclaimers.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *U.S. v. Bighead*, 128 F.3d 1329, 1335 (9th Cir. 1997) ("Experts are not to testify to their subjective belief or unsupported speculation."); *Mesfun v. Hagos*, CV 03-02182 MMM(RNBX, 2005 WL 5956612, at *11 (C.D. Cal. Feb. 16, 2005) ("Opinions of an expert need not be accepted when they are based on nothing more than personal opinion or belief, instead of an understandable scientific [or experiential] basis.")[6]

In lieu of evidence showing voter confusion, Plaintiffs rely on the unpublished opinion in *California Republican Party v. Fair Political Practices Commission*, 2004 U.S. Dist. LEXIS 22160 (E.D. Cal. October 27, 2004), but that case supports the City, not Plaintiffs.  In *California Republican Party,* the court considered Proposition 208, which required any committee paying for an advertisement supporting or opposing a ballot measure to identify on the face of the advertisement the committee's two largest contributors of $50,000.  The court entered a preliminary injunction against the law as applied to political parties because the disclaimer requirement did not assist the voter in understanding who was speaking.  The court explained that, "[i]n the context of political parties, the true 'speaker is the political party, whose name is disclosed on the face of the advertisement." *Id.* at *18.  By contrast, the court explained that the disclaimer requirement could be valid when applied to "primarily formed" committees such as Yes on Prop B that are formed to support a particular ballot measure.  When applied to those "primarily formed committees," disclosure of contributors could "prove useful at identifying the true 'speaker,'" and noted that the "government may indeed have a compelling interest in unveiling for the voters the true 'speakers' behind such an advertisement." *Id.* Those same "compelling interests" support Proposition F's secondary contributor requirement.[7] Indeed, Proposition F's disclaimer requirements apply only to "primarily formed independent expenditure committees and primarily formed ballot measure committees," (RJN Ex. C at 112,); and,

---

[6] The same speculation and lack of foundation is evident in paragraphs 15, 16, 41, 55, 62, 85 and 96 of Ms. Muir's declaration.

[7] *California Republican Party* is also distinguishable because the court applied strict scrutiny when evaluating the disclaimer requirement.  *Id.*  The Supreme Court has since "made clear that exacting scrutiny, not strict scrutiny, is applicable to campaign finance disclosure requirements." *Brumsickle*, 624 F.3d at 1013.  Thus, the district court applied a standard that "set the bar too high." *Id.*

therefore, the concerns the court expressed in *California Republican Party* with respect to political parties are not presented here.

### ii.      Proposition F does not impermissibly chill fundraising.

Plaintiffs fare no better with their claim that Proposition F should be invalidated because it will chill their fundraising.  According to Plaintiffs, political action committees may not wish to disclose their contributors, and therefore will feel reluctant to donate to Yes on Prop B.  (MPA at 20.)  It is certainly true that Proposition F's requirements – like all disclosure and disclaimer requirements – may deter contributions from some entities that do not wish to disclose their major donors.  *See Buckley v. Valeo*, 424 U.S. 1, 68 (1976) ("It is undoubtedly true that public disclosure of contributions to candidates and political parties will deter some individuals who otherwise might contribute.")  But the Ninth Circuit has described that burden on First Amendment rights as "modest," and has held that small deterrent effect does not outweigh the government's interests in providing information about funding sources to the voters.  *Fam. PAC*, 685 F.3d at 806–09; *see also Citizens United*, 558 U.S. at 366 (upholding disclaimer requirements even though they "may burden the ability to speak," because "they impose no ceiling on campaign-related activities, and do not prevent anyone from speaking.")

The same is true here.  Any chill that exists simply results from political committees' desire to keep the voters in the dark about their major donors.  Indeed, without Proposition F, political committees would continue to be able to hoodwink the public by "hiding behind dubious and misleading names like: 'The Coalition–Americans Working for Real Change' (funded by business organizations opposed to organized labor), 'Citizens for Better Medicare' (funded by the pharmaceutical industry), 'Republicans for Clean Air' (funded by brothers Charles and Sam Wyly)." *McConnell*, 540 U.S. at 197 (quoting *McConnell v. Fed. Election Commn.,* 251 F. Supp. 2d 176, 237 (D.D.C. 2003).)  But such tactics are contrary to the spirit and purposes of the First Amendment.  As the Supreme Court recognized, "'uninhibited, robust, and wide-open' speech" cannot "occur when organizations hide themselves from the scrutiny of the voting public." *Id.*  Simply put, Plaintiffs' argument for striking down Proposition F's secondary contribution requirement "does not reinforce the precious First Amendment values that Plaintiffs argue are trampled," but instead "ignores the competing First Amendment interests of individual citizens seeking to make informed choices in the

political marketplace." *Id.*; *Fam. PAC*, 685 F.3d at 809 (explaining that "an informed electorate . . . is of the utmost importance").  If Plaintiffs' supporters choose to not donate funds in order to avoid disclosing facts about the sources of their funding, that choice stands as their own condemnation of the informational value of the disclaimers, and does not establish harm to the public interest.

Plaintiffs' chill argument also fails because Plaintiffs have not cited any admissible evidence to show that Proposition F's disclaimer requirements "actually and meaningfully" reduce contributions. *Fam. PAC*, 685 F.3d at 807.  Plaintiffs rely on a declaration from Plaintiff Todd David, who says that some unidentified number of committees have told him that they do not wish to "contribute the requested amounts" because "they are concerned by the fact their own contributors could be disclosed on communications by" Yes on Prop B.  (David Dec. ¶¶ 23-24.)  Mr. David's description of what others have told him is nothing more than hearsay, which is inadmissible pursuant to Federal Rule of Evidence 802.  Further, even if those paragraphs could be considered as evidence, anecdotal stories about some committees' decision to not "contribute the requested amounts" to one single campaign committee does not show that Proposition F will cause a meaningful deterrence in donations in San Francisco.  *Fam. PAC*, 685 F.3d at 807.  Indeed, because information about "secondary contributors" is already in the public record, it is hard to see why – and Plaintiffs have offered no evidence to show – Proposition F's disclaimer requirements will have any meaningful effect on contributions.

### iii. Secondary contributor disclaimer requirement provides useful information to the voters.

Finally, Plaintiffs contend that the secondary contributor requirement is unnecessary, and therefore not substantially related to the City's governmental interests, because committees already file campaign finance disclosure reports.  Plaintiffs note that motivated voters could already figure out on their own that Yes on Prop B received its major funding from United Democratic Club of San Francisco, Edwin M. Lee Democratic Club Political Action Committee, and Yes on A, Affordable Homes for San Franciscans Now!, and then could figure out the major donors to those committees.  But Plaintiffs offer no authority for the proposition that the City cannot require disclaimers merely because the information provided is already "part of the public record."  (MPA at 20.)  As the Ninth Circuit explained, we cannot expect voters to "explore the myriad pressures to which they are

regularly subjected" because "[p]eople have jobs, families, and other distractions. While we would hope that California voters will independently consider the policy ramifications of their vote, and not render a decision based upon a thirty-second sound bite they hear the day before the election, we are not that idealistic nor that naive." *Getman*, 328 F.3d at 1106.  The City may make it easier for voters by requiring disclaimers that provide "a useful shorthand for evaluating the speaker behind the sound bite." *Id.*  That is particularly true where, as here, the voters themselves enacted the disclaimer requirement.  We do not have to speculate about whether the voters found the prior disclosure requirements to be sufficient.  San Francisco voters resoundingly demonstrated that they wanted disclaimers that would allow them to determine the secondary source of funds behind campaign ads when they approved Proposition F with 76.89% of the vote.  (RJN Ex. B.)  In addition, disclaimers provide benefits that disclosures do not.  Disclaimers give voters the information they need to evaluate the speaker's message *at the same time they hear or see the message*; whereas, disclosures will only be viewed after the fact by individuals who have the time and motivation to search for them.

Plaintiffs argue that the relationship between the secondary contributor and the ultimate speaker is "far too attenuated to justify" Proposition F's disclosure requirement.  (MPA at 22.)  But Plaintiffs cite no evidence to support that statement, and indeed, it is false.  The disclosure of secondary contributors is not "attenuated," but instead provides the information the voters need to look behind committee names and understand the direct and indirect funding sources for the advertisement.  *See Getman*, 328 F.3d at 1105–06; *Citizens United v. Gessler*, 773 F.3d 200, 215 (10th Cir. 2014) ("When a speaker "drops in" on an election and starts talking about candidates and issues, the electorate wants to know who the speaker is to better enable it to evaluate the message. Knowing who is financing the speaker can be helpful in this regard.")[8]

To support its argument that secondary contributors are "too attenuated" to be disclosed to the voters, Plaintiffs rely on *Citizens Union of City of New York v. Atty. Gen. of New York,* 408 F. Supp.

---

[8] There is no merit to Plaintiffs' claim that the secondary disclosure requirement is too attenuated because it is "possible" that "Committee on Jobs' donations were spent in full by the original committees" and therefore it is "possible" that the same dollars Committee on Jobs donated did not flow to Yes on Prop B.  (MPA at 22.)  Plaintiffs forget that dollars are fungible.  The point is not whether one can track any particular dollar.  The point is that the voters want to know the major contributors to the entities funding political campaigns.

3d 478 (S.D.N.Y. 2019), but that case is easily distinguishable.  In *Citizens Union*, the court considered a law that would have required a 501(c)(3) organization to file a public report disclosing the identity of all donors who gave it more than $2,500, if the 501(c)(3) organization made an in-kind donation of greater than $2,500 to a 501(c)(4) organization engaged in lobbying.  *Id.* at 504.  The court explained that the disclosure requirement made little sense because 501(c)(3) organizations must have an exempt purpose to retain their 501(c)(3) tax exemption, and that exempt purpose cannot include campaigning for candidates for office or lobbying elected officials.  Further, any support a 501(c)(3) entity provides a 501(c)(4) must not render lobbying a "substantial part" of the 501(c)(3) organization's activities, or the entity would lose its status as a 501(c)(3).  *Id.*  Therefore, it does not further a substantial governmental interest for the voters to be informed about donors to a 501(c)(3) organization that, by definition, cannot engage in either campaigning for candidates for office or lobbying elected officials.  *Id.* at 504-05.  The facts presented in *Citizens Union* are far afield from those at issue in this case.  This case does not concern disclosures by a 501(c)(3) organization or disclosures by any entity that is not engaged in election campaigning.  *Id.* at 504.  Instead, Proposition F seeks to address the well-recognized problem of political action committees hiding behind misleading names to keep the voters from learning the true sources of funding for a measure. *McConnell*, 540 U.S. at 197.

Accordingly, Plaintiffs have not shown a likelihood of success on their claim that Proposition F's secondary contributor disclaimer requirement violates the First Amendment.

## II.   THE "SPOKEN DISCLAIMER" REQUIREMENT ENACTED BY THE BOARD OF SUPERVISORS IS CONSTITUTIONAL.

As noted above, the San Francisco Board of Supervisors amended San Francisco Campaign and Government Code Section 1.161(a)(5) before the enactment of Proposition F to require that political committees include a spoken disclaimer in each of their audio and video advertisements, identifying their top three contributors of $10,000 or more.  (RJN Ex. A.)  The law permitted disclaimers to be spoken at the end of an advertisement.  (*Id.*)

Although Plaintiffs state that they are challenging that spoken disclaimer requirement, Plaintiffs do not explain why they believe that requiring a spoken disclaimer violates their rights.  Nor

could they, as the Supreme Court in *Citizens United* upheld a spoken disclaimer requirement under the same exacting scrutiny standard applicable here. *Citizens United*, 558 U.S. at 368. Further, although the spoken disclaimer requirement was in effect during the last election, Plaintiffs have not demonstrated that the requirement had a detrimental effect on anyone's First Amendment rights.[9]

From their brief, it appears that Plaintiffs are challenging the spoken disclaimer requirement only because of the changes to spoken disclaimer requirement enacted by the voters through Proposition F. According to Plaintiffs, the length of the spoken disclaimer required by Proposition F and Proposition F's requirement that the disclaimer come at the beginning of the advertisement would unduly burden Plaintiffs' speech. But, as explained above, the City concedes that Plaintiffs are entitled a preliminary injunction preventing the enforcement of Proposition F's spoken disclaimer requirements applicable to Plaintiffs' proposed audio and video advertisements. That injunction will resolve the concerns Plaintiffs have expressed about the spoken disclaimer requirement. (MPA at 6-7.) Indeed, if Plaintiffs obtain an injunction against Proposition F as applied to their audio and video advertisements, Plaintiffs will not even be subject to the spoken disclaimer requirement because the spoken disclaimer requirement enacted by the Board of Supervisors only requires a spoken disclaimer of contributors of $10,000 or more, and Plaintiffs admit that they do not have any contributors of that amount. (David Dec. ¶¶ 12-13.)

Accordingly, while the City agrees that Plaintiffs are entitled to an injunction preventing the enforcement of Proposition F as applied to spoken disclaimers on Plaintiffs' video and audio advertisements, Plaintiffs have not shown that they are entitled to an injunction against any other applications of the spoken disclaimer requirement enacted by the Board of Supervisors.

## III.   THE REMAINING EQUITABLE FACTORS FAVOR THE CITY.

As explained above, Plaintiffs cannot show a likelihood of success on the merits with respect to their large format advertisements. In addition, Plaintiffs cannot satisfy the remaining equitable requirements for receiving a preliminary injunction because Plaintiffs are not likely to suffer irreparable harm in the absence of a preliminary injunction, the balance of equities tips in the City's

---

[9] Further, spoken disclaimer requirements are already required by California law. *See, e.g.* Gov. Code §§ 84504(a), 84504.4(a), 84504.5(a).

favor, and an injunction against a voter approved measure is not in the public interest.  *Winter*, 555 U.S. at 20.

With respect to the irreparable harm factor, Plaintiffs note correctly that the loss of First Amendment freedoms constitutes irreparable injury.  But, as explained above, Plaintiffs are not likely to suffer any deprivation of their First Amendment rights because of Proposition F's application to their large format advertisements.  Plaintiffs' interest in not disclosing information to the voters about their contributors and secondary contributors in a size the voters can easily read is a "modest" interest, at best.  *Fam. PAC*, 685 F.3d at 806.  By contrast, the City's interest in providing information to the voters about who is funding political speech concerning ballot measures is "of the utmost importance." *Id.* at 809; *Getman*, 328 F.3d at 1105–06 ("Knowing which interested parties back or oppose a ballot measure is critical . . .").

The balancing of the equities factor also favors the City.  In "balanc[ing] the hardships of the public interest against a private interest, the public interest should receive greater weight."  *Fed. Trade Comm'n v. Affordable Media, LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999); *Fund For Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992) (if injunction would implicate public interest, plaintiffs must show the "public interest favors the[m]").  Plaintiffs argue that there is a public interest in upholding First Amendment principles, *see Doe v. Harris*, 772 F.3d 563, 583 (9th Cir.2014), but "where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may [then] in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff."  *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312-13 (1982).  Beyond the public's general interest in the implementation of laws enacted by the voters or their duly elected representatives, *see Planned Parenthood of Blue Ridge v. Camblos*, 116 F.3d 707, 721 (4th Cir. 1997), the public has an interest in making sure that voters have the information they need to make informed choices about ballot measures.  *Brumsickle*, 624 F.3d at 1008.  Proposition F furthers those interests.

Moreover, Plaintiffs' argument about the balance of the hardships and the public interest depends on the merits of their First Amendment claims, and it fails for the same reasons with respect to Plaintiffs' large format advertisements.  *See supra*, Section I(B).  Similarly, Plaintiffs' argument

that an injunction will prevent San Franciscans from being misled is meritless because the disclaimers are not misleading.  *See supra*, Section I(B)(2)(b).  Plaintiffs contend that the public interest will be harmed if Plaintiffs are required to provide information about the secondary contributors to Yes on Prop B, but that argument gets the law exactly backwards.  The public interest favors disclosure of the information the voters need to make informed decisions.  As the Ninth Circuit has explained, "[p]roviding information to the electorate is vital to the efficient functioning of the marketplace of ideas, and thus to advancing the democratic objectives underlying the First Amendment."  *Brumsickle*, 624 F.3d at 1005.  Disclaimer requirements such as Proposition F "help ensure that voters have the facts they need to evaluate the various messages competing for their attention."  *Id.*  Plaintiffs' interest in hiding its sources of funding – both direct and indirect – from the public pales in comparison to the voters' need for information that would allow them to make "informed choices in the political marketplace."  *McConnell*, 540 U.S. at 197 (quoting *McConnell,* 251 F. Supp. 2d at 237.)  Thus, the public interest favors the City, not Plaintiffs.

## IV.   PLAINTIFFS ARE NOT ENTITLED TO THE REMEDY THEY SEEK.

Plaintiffs ask the Court to enter the following injunction: "[D]efendant City and County of San Francisco, and its officers, agents, divisions, commissions, and all persons acting under or in concert with it, are hereby restrained and enjoined from enforcing the spoken disclaimer rule codified at Section 1.161(a)(5) of the San Francisco Campaign & Government Conduct Code and the disclaimers laws adopted through Proposition F ('Prop F'), which amended Section 1.161 and imposed new requirements on campaign advertisement disclaimers."  (Pl. Proposed Order, at 1.)  Plaintiffs are not entitled to that relief because Proposition F does not unconstitutionally burden Plaintiffs' speech on their large format advertisements, and Plaintiffs have not shown that they are entitled to an injunction that would apply to anyone other than themselves.

As explained above, Plaintiffs have not shown that they are likely to succeed on the merits of their claim that Proposition F poses an unconstitutional burden on Plaintiffs' large format advertisements.  As explained above, Proposition F's disclaimer is not unconstitutional when it appears on Plaintiffs' large format advertisements, the secondary contributor requirement does not

1 unconstitutionally burden Plaintiffs' speech, and the spoken disclaimer requirement enacted by the

2 Board of Supervisors is constitutional.  Therefore, the injunction Plaintiffs seek is overbroad.

3       Plaintiffs' proposed injunction is also overbroad because it would invalidate Proposition F's

4 disclaimer requirement on its face, but Plaintiffs have not shown they are entitled to that relief.  As the

5 Supreme Court has repeatedly explained, "[f]acial challenges are disfavored." *Washington State*

6 *Grange*, 552 U.S. at 450.  To obtain relief that would invalidate a law in all of its applications (as

7 Plaintiffs seek here), Plaintiffs would have to show that a "substantial number" of Proposition F's

8 applications are unconstitutional, when "judged in relation to the statute's plainly legitimate sweep."

9 *Id.* at 450 n. 6.  Here, Plaintiffs have not satisfied their "heavy burden" to make that showing.  *See*

10 *McConnell,* 540 U.S. at 207.  Although Plaintiffs have demonstrated that Proposition F's disclaimer

11 requirements burden Yes on Prop B's speech as applied to its proposed 5" by 5" newspapers

12 advertisements, smaller "ear" advertisements, and spoken disclaimers on Plaintiffs' digital/audio

13 advertisements of 30 seconds or less, (*see* David Dec. ¶¶ 29, 31-33), Plaintiffs have not introduced

14 evidence or even offered any arguments in their brief that would allow the Court to conclude that

15 Proposition F is unconstitutional in a "substantial number" of its other applications.  Specifically,

16 Plaintiffs have not shown how many other committees in San Francisco would face unconstitutional

17 burdens from Proposition F's disclaimer requirements.  Nor have Plaintiffs shown that a substantial

18 proportion of political speech in San Francisco would face unconstitutional burdens from Proposition

19 F.  As Plaintiffs explain, the problems Plaintiffs experienced with respect to its smaller/shorter

20 advertisements results from the fact that Yes on Prop B "accepted three contributions from other

21 committees, and therefore under Proposition F, the top two donors of those committees must be

22 identified on the Committee's disclaimers."  (David Dec. ¶ 30.)  Plaintiffs offer nothing to suggest that

23 is a common occurrence.  Thus, Plaintiffs have not provided the Court with the factual record it would

24 need to grant the broad injunction Plaintiffs seek.  *Yamada v. Kuramoto*, 744 F. Supp. 2d 1075, 1084

25 (D. Haw. 2010) (declining to issue facial injunction whether plaintiff failed to provide the factual

26 record needed to allow the court to determine whether a substantial number of other applications of the

27 campaign finance law would be unconstitutional).

28

1    Further, there is good reason to doubt that Proposition F will have such a detrimental effect on

2    speech that Plaintiffs would be entitled to the extraordinary remedy they seek.  The voters enacted

3    Proposition F over three months ago, and the March 2020 election is only weeks away.  If Proposition

4    F's requirements were causing a "substantial number" of unconstitutional problems in San Francisco,

5    one would have expected other committees to have challenged Proposition F's requirements by now,

6    but they have not.  Indeed, other committees are complying with Proposition F's requirements, and

7    those requirements do not appear to pose any unconstitutional burdens on their speech.  (Ford Dec. ¶¶

8    1-2, Ex. A.)  Any preliminary injunction issued by the Court should apply only to Plaintiffs.

## CONCLUSION

10    For the reasons stated above, the Court should enjoin Proposition F as applied to Plaintiffs'

11    proposed 5" by 5" newspapers advertisements, smaller "ear" advertisements, and spoken disclaimers

12    on digital/audio advertisements of 30 seconds or less.  In all other respects, the Court should deny

13    Plaintiffs' motion. Accordingly, the City suggests that the Court enter the following preliminary

14    injunction: "Defendant City and County of San Francisco, and its officers, agents, divisions,

15    commissions, and all persons acting under or in concert with it, are hereby restrained and enjoined

16    from enforcing the disclaimers laws adopted through Proposition F with respect to Plaintiffs' 5" by 5"

17    newspapers advertisements, smaller "ear" advertisements, and spoken disclaimers on digital/audio

18    advertisements of 30 seconds or less, where the required disclosures consume more than 40% of the

19    advertisements."

20

21    Dated:  February 7, 2020                    DENNIS J. HERRERA
                                                  City Attorney
22                                                ANDREW SHEN
                                                  TARA M. STEELEY
23                                                JENICA MALDONADO
                                                  Deputy City Attorneys
24

25                                          By:   s/Tara M. Steeley
                                                  TARA M. STEELEY
26

27                                          Attorneys for Defendant
                                            CITY AND COUNTY OF SAN FRANCISCO
28