THOMAS A. WILLIS, State Bar No. 160989
ANDREW HARRIS WERBROCK, State Bar No. 304509
KRISTEN MAH ROGERS, State Bar No. 274672
OLSON REMCHO, LLP
1901 Harrison Street, Suite 1550
Oakland, CA 94612
Phone: (510) 346-6200
Fax: (510) 574-7061
Email: twillis@olsonremcho.com

JESSE MAINARDI, State Bar No. 215591
MAINARDI LAW
315 Montgomery Street, 9th Floor
San Francisco, CA 94104
Phone: (415) 735-1649
Email: jesse@mainardi.law

Attorneys for Plaintiffs
Yes on Prop. B, Committee in Support of the
Earthquake Safety and Emergency Response
Bond and Todd David

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| YES ON PROP. B, COMMITTEE IN SUPPORT OF THE EARTHQUAKE SAFETY AND EMERGENCY RESPONSE BOND and TODD DAVID,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | No.: 3:20-cv-00630<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing:<br><br>Date: February 14, 2020<br>Time: 10:00 a.m.<br>Crtrm.: 6<br>Judge: The Hon. Charles R. Breyer |

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ...........................................................................................................ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT

I.      THE DISCLAIMER RULES ARE UNCONSTITUTIONAL BECAUSE THEY CAUSE A SUBSTANTIAL MISMATCH BETWEEN THE BURDEN PLACED ON SPEECH AND THE GOVERNMENTAL INTEREST BEING ADVANCED ........................................................................................... 2

II.     THE SECONDARY CONTRIBUTOR RULE DOES NOT SURVIVE EXACTING SCRUTINY ................................................................................................ 6

    A.      The Secondary Contributor Rule Severely Burdens First Amendment Rights ............................................................................................................... 6

    B.      The City Has Not Provided a Sufficiently Important Governmental Interest to Justify the New Secondary Contributor Rule .................................... 9

    C.      The Secondary Contributor Rule Is Poorly Tailored to Advance the City's Stated Goal ........................................................................................ 10

III.    THE CITY'S SPOKEN DISCLAIMER RULE IS UNCONSTITUTIONAL ........................... 13

IV.    THE COURT SHOULD ENJOIN THE SPOKEN DISCLAIMER AND PROP. F'S DISCLAIMER LAWS IN THEIR ENTIRETY ....................................................... 14

## **TABLE OF AUTHORITIES**

**CASES:** **Page(s)**

*ACLU of Nevada v. Heller*, ................................................................................................... 10
    378 F.3d 979 (2004)

*Alaska Right to Life Committee v. Miles*, ............................................................................. 10
    441 F.3d 773 (9th Cir. 2006)

*American Beverage Association v. City and County of San Francisco*, ............................. 3, 4
    916 F.3d 749 (9th Cir. 2019)

*California Pro-Life Council, Inc. v. Getman*, ......................................................................... 9
    328 F.3d 1088 (9th Cir. 2003)

*California Republican Party v. Fair Political Practices Commission*, ............................. 7, 8
    No. CIV-S-04-2144, 2004 U.S. Dist. LEXIS 22160
    (E.D. Cal. Oct. 27, 2004)

*Citizens Union of City of New York v. Attorney General of New York*, ............................... 12
    408 F. Supp. 3d 478 (S.D.N.Y. 2019)

*Citizens United v. Federal Election Commission*, ............................................... 2, 10, 14, 15
    558 U.S. 310 (2010)

*Davis v. Federal Election Commission*, ................................................................................. 5
    554 U.S. 724 (2008)

*Family PAC v. McKenna*, ....................................................................................................... 9
    685 F.3d 800 (9th Cir. 2012)

*Federal Election Commission v. Wisconsin Right to Life*, ..................................................... 5
    551 U.S. 449 (2007)

*Human Life of Washington Inc. v. Brumsickle*, ................................................................... 10
    624 F.3d 990 (9th Cir. 2010)

*McConnell v. Federal Elections Commission*, ....................................................................... 3
    540 U.S. 93 (2003)

*McCutcheon v. Federal Elections Commission*, ......................................................... 9, 10, 11
    572 U.S. 185 (2014)

*Metromedia, Inc. v. City of San Diego*, .................................................................................. 4
    453 U.S. 490 (1981)

*Minnesota Citizens Concerned for Life, Inc. v. Swanson*, ................................................... 12
    692 F.3d 864 (8th Cir. 2012)

*ProtectMarriage.com v. Bowen*, ............................................................................................. 9
    599 F. Supp. 2d 1197 (E.D. Cal. 2009)

*Sorrell v. IMS Health, Inc.*, .................................................................................................... 6
    564 U.S. 552 (2011)

**TABLE OF AUTHORITIES:  (continued)** **Page(s)**

*Virtue Global Holdings Ltd. v. Reardon LLC*, .................................................................................. 8, 9
    No. 15-cv-00797-JST-2016 U.S. Dist. LEXIS 79442
    (N.D. Cal. June 17, 2016)

*Washington State Grange v. Washington State Republican Party*, .......................................................... 7
    552 U.S. 442 (2008)

*Yamada v. Snipes*, ..................................................................................................................... 10
    786 F.3d 1182 (9th Cir. 2015)

**CALIFORNIA STATUTES:**

Government Code
    § 84223 ................................................................................................................................ 13
    § 84501 .................................................................................................................................. 2
    § 84504 .................................................................................................................................. 2
    § 84504.1 ............................................................................................................................... 6
    § 85704 ................................................................................................................................ 11
    § 91000 ................................................................................................................................ 11
    § 91004 ................................................................................................................................ 11

**MISCELLANEOUS:**

2 Cal. Code of Regs. § 18422.5 ............................................................................................. 13

11 C.F.R. § 110.11 .................................................................................................................. 3

52 U.S.C. § 30120 ................................................................................................................... 3

SF Code, § 1.170 ................................................................................................................... 11

# INTRODUCTION

The City concedes that its disclaimer law is unconstitutional and must be enjoined in a substantial number of applications: digital and audio ads of 30 seconds or less, and newspaper ads of less than a half-page.

However, the City claims it can still take **40%** of every political ad and turn that space into a mini-campaign finance report, on the grounds that it is easier for a voter to get that information on the face of an ad than having to go to the Ethics Commission's website. The argument is not supported by any law, ignores the Ninth Circuit's recent holding that an on-ad disclaimer of more than 10% unconstitutionally burdened speech, and would lead to the absurd result whereby disclaimers for similarly situated committees would be vastly different in content, location, size, and timing, depending on whether they fell above or below the 40% mark.

The City's defense of its secondary contributor rule also fails. While the City repeatedly refers to the public's right to know the sources of political advertising, it points to no case law that has upheld an on-ad disclaimer identifying anyone other than the sponsor of the ad. The City also claims that the restrictions are necessary to prevent committees from hiding information from the voters, but ignores that current law already provides these protections. Moreover, in the one concrete case that the City complains about, involving Progress San Francisco, that Committee was identified as a major funder to the committee disseminating the advertisements, and its sources of financial support were available online at the Secretary of State's website well before the election and were the subject of pre-election press coverage.

The City tries to limit the damage of its admission that Prop. F is unconstitutional by arguing that the Court should either enter an injunction limited to plaintiffs and not anyone else or, in the alternative, refrain from enjoining the spoken disclaimer and the Prop. F disclaimer rules in their entirety. But the City's proposal would only invite chaos and uncertainty, chilling political speech. The numerous other participants in the upcoming City election will have no idea whether some or all of Prop. F still applies to them, or whether they can rely on this Court's ruling if their disclaimers are similar to those of plaintiffs. The First Amendment does not permit such uncertainty.

# ARGUMENT

## I. THE DISCLAIMER RULES ARE UNCONSTITUTIONAL BECAUSE THEY CAUSE A SUBSTANTIAL MISMATCH BETWEEN THE BURDEN PLACED ON SPEECH AND THE GOVERNMENTAL INTEREST BEING ADVANCED

The City argues that its disclaimer rules are constitutional if they take up 40% or less of any political ad.[1]  Defendant's Opposition to Motion for Preliminary Injunction ("Opp.") at 7-8.  For this proposition, the City relies exclusively on *Citizens United v. Federal Elections Commission*, 558 U.S. 310 (2010), but the case does not remotely support such a rule.  In *Citizens United*, the Court upheld the application of the disclaimer rules found in the Federal Election Campaign Act (FECA) of 1971 to electioneering communications, television and radio advertisements that identify a candidate and are disseminated near the time of that candidate's election.  *Id*. at 320-22, 367-69.  The disclaimer law challenged in *Citizens United* required (1) a spoken statement that "Citizens United is responsible for the content of this advertising" and (2) a written disclaimer, on-screen for 4 seconds identifying the sponsor and that the Committee was not authorized by any candidate.  *Id*. at 366; *see also* 52 U.S.C. § 30120(a), (d).

In *Citizens United*, the Court's entire analysis of the disclaimer rule consisted of three sentences:

> [Plaintiff] asserts that § 311 decreases both the quantity and effectiveness of the group's speech by forcing it to devote four seconds of each advertisement to the spoken disclaimer.  We rejected these arguments in *McConnell*, *supra*, at 230-231, 124 S. Ct. 619, 157 L. Ed. 2d 491.  And we now adhere to that decision as it pertains to the disclosure provisions.

*Id*. at 368.

---

[1] Thus, the City contends that the disclaimer for plaintiffs' newspaper ad of 10" x 5" (occupying 31-33% of the available space), window sign (35%), and palm card (17-19%) are all constitutional.  Defendant's Opposition to Motion for Preliminary Injunction ("Opp.") at 7.  The City does not argue that the new disclaimer requirements are constitutional as applied to volunteer phone calls and has, therefore, waived the argument.  Rather, the City argues that plaintiffs have not offered any authority to support the claim that the disclaimer requirement applies to those phone calls.  The City ordinance cross-references the Political Reform Act which, in turn, defines "advertisement" broadly as "any general or public communication that is authorized and paid for by a committee for the purpose of supporting or opposing a candidate or candidates for elective office or a ballot measure or ballot measures," Cal. Gov't Code § 84501(a)(1), and disclaimers are specifically required on advertisements "disseminated . . . by telephonic means."  *Id*. § 84504(a).  While volunteer labor is, by definition, free, there are other costs frequently associated with volunteer telephone banks, such as phone service, equipment, room rental, and refreshments for volunteers.

*McConnell's* reasoning was equally terse. *See McConnell v. FEC*, 540 U.S. 93, 231 (2003). Neither case provides any support for an across-the-board 40% assessment on political speech, as the City suggests. The on-screen disclaimer at issue in *Citizens United* and *McConnell* needed only to be visible for 4 seconds, *see* 52 U.S.C. § 30120(d)(2), and the minimal spoken disclaimer could be recited in less than 4 seconds.[2] But more importantly, in both cases the Court simply upheld the minimal requirement that the sponsor of an ad be identified at the end of the ad. The identity of the sponsor is basic information that permits a listener to go to the Federal Election Commission's website to find out additional information about the sponsor's contributors and expenditures.

Thus, *Citizens United* supports a short spoken and written disclaimer at the end of a video or audio advertisement identifying Yes on Prop B as the sponsor, nothing more. Yet the City claims *Citizens United* gives it license to require, for a 30-second digital or audio ad, a spoken disclaimer of up to 12 seconds at the *beginning of the ad* before any political message can be conveyed, containing types of information that were not addressed by *Citizens United*. Likewise, the City argues that it can take up to 40% of all print ads, which were not at issue in *Citizens United* or *McConnell*, and impose any combination of formatting and disclosure rules within that space to provide voters with campaign reporting information that can be easily obtained elsewhere. This one-size-fits-all approach flunks the close tailoring test that is required when the First Amendment is at stake.

The City's 40% rule also fails as a matter of law because it ignores the very real burden its disclaimer rules place on political speech. Ironically, during the *same week* the City argued in this case that a disclaimer that takes up to **40%** of a political ad does not unconstitutionally burden speech, its Board of Supervisors unanimously adopted an ordinance requiring the on-ad disclaimer at issue in *American Beverage*[3] take up no more than **10%** of ad space because anything larger would unconstitutionally burden speech. Declaration of Jesse Mainardi ("Mainardi Decl."), Ex. C at 5 (Board

---

[2] Under Federal Election Commission rules, the printed disclaimer must be in letters equal to 4% of the vertical screen height. 11 C.F.R. § 110.11(c)(4)(iii)(A). Thus, assuming that the required printed disclaimer comprises two lines of text, it would only take up 3.2% of the available screen space in a ten-second ad (8% of the screen for 4 seconds).

[3] *Am. Beverage Ass'n v. City and Cty. of San Francisco*, 916 F.3d 749 (9th Cir. 2019).

approving Ordinance No. 191284, February 4, 2020). And the City's attempts to distinguish *American Beverage* in this case are unavailing.[4]

First, the City argues that "*American Beverage* is not an election law case, and plaintiffs have not cited any authority for the proposition that the holdings from commercial speech cases can be applied in the election context." Opp. at 9. The argument lacks merit. While the two cases involve different types of speech – commercial versus political – that difference only highlights the fact that the political speech in this case receives *more* protection under the First Amendment than commercial speech involved in *American Beverage*. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 513 (1981) (The Supreme Court has "consistently accorded noncommercial speech a greater degree of protection than commercial speech.").

Second, the City argues that *American Beverage* involved "a warning that the advertisers claimed would compete with their own message and potentially reduce the demand for their products" while in this case "the required disclaimer does not compete with or threaten to undermine Yes on B's message." Opp. at 10. The argument is both factually and legally wrong. It is factually wrong because the proposed disclaimers here do threaten to undermine Yes on Prop B's message: the sheer size of the disclaimer detracts from plaintiffs message, the secondary contributor information gives the appearance that Yes on Prop B is awash in large contributions when it is not, and the disclaimer gives the strong impression that the Committee on Jobs, the Realtors, Salesforce, and Chris Larsen all contributed to Yes on Prop B and approved its message when they did not. The argument is legally wrong because the court's holding in *American Beverage* was based entirely on the fact that the size of the ad (20%) unconstitutionally burdened speech, not that the substance of the disclaimer was not to plaintiff's liking or conveyed a controversial opinion. *American Beverage*, 916 F.3d at 757 ("The Supreme Court made clear in *NIFLA* that a government-compelled disclosure that imposes an undue burden fails for that reason alone . . . . We need not, and therefore do not, decide whether the warning here is factually accurate and noncontroversial.")

---

[4] The City also argues that the fact that other committees are complying with the law is evidence it is not overly burdensome, citing to only two compliant advertisements, a four-page mailer distributed by another committee supporting Proposition B, and a web video by a committee that reported only two major donors and no secondary contributors. Opp. at 2. But the fact that two committees issued a communication that complied with the law is more probative of the fact that challenging Prop. F carries a political risk and noncompliance is met with criminal penalties than it is of the law's constitutionality.

PLS.' REPLY IN SUPPORT OF MOT. FOR
PRELIM. INJ. – NO. 3:20-cv-00630            4

Third, the City argues that the court in *American Beverage* applied a different legal test and that the Ninth Circuit's rejection "of a 20% commercial warning when applying the *Zauderer* test says nothing about whether the Ninth Circuit would uphold political disclaimers under exacting scrutiny." Opp. at 10. Plaintiffs disagree. The test in *American Beverage* (and *Zauderer*) and the test here do precisely the same thing: determine the fit between the governmental interest being advanced by a disclaimer rule and the burden such a rule places on speech. The *Zauderer* test requires a "reasonably related" fit while exacting scrutiny requires a "substantial relationship." Thus, *American Beverage* involved a *lower level of review* than here. The City is also wrong to suggest that the undue burden prong of the *Zauderer* test is irrelevant to an exacting scrutiny analysis. In order to survive exacting scrutiny, "the strength of the governmental interest [in a disclosure law] must reflect the seriousness of the *actual burden* on First Amendment rights." *Davis v. Federal Election Comm'n*, 554 U.S. 724, 744 (2008) (emphasis added).

The bottom line is *American Beverage* upheld an injunction against a compelled disclaimer that took up more than 10% of an ad, and San Francisco has now enshrined that standard in legislation. *See* Mainardi Decl., Ex. D. Every one of the advertisements the City still claims is constitutional in this case fails that rule. *See* Opp. at 7.

The City's brief also fails to show how the disclaimer requirements are tailored to achieve the government's interest. As a proposed regulation imposes more burden on speech by taking away more of plaintiffs' ad space, the City must justify the specific need for that change and demonstrate that need qualifies as an important interest. *See Davis*, 554 U.S. at 744; *FEC v. Wisconsin Right to Life*, 551 U.S. 449, 463 (2007). But here, the City has provided no evidence that the changes made by Prop. F to the panoply of existing state and local disclaimer rules were necessary to advance a sufficiently important governmental interest. The City has provided *no evidence* – either through the text of Prop. F or in this litigation – demonstrating why it was necessary to require a spoken disclaimer *at the beginning* of every video, audio, or phone ad, thereby taking away from the speaker the most precious and important seconds of a communication. The City has provided *no evidence* or rationale as to why disclaimers on print ads had to change from 12-point font to 14-point font, or why an *entire*

disclaimer must be spoken for all audio and video ads[5] instead of just identifying the sponsor, as was the case in *Citizen United*. The City provides *no evidence* or rationale why the existing disclaimer requirements – which already exceeded those imposed by state law, some of the most exacting in the country – were inadequate and needed to be made more robust. The complete absence of any record in this case strongly suggests that these burdensome disclaimer rules – which apply uniquely to independent expenditure committees and ballot measure committees, but notably not candidates – are more about keeping certain participants from speaking than advancing a legitimate governmental interest. *See Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 580 (2011) (Speaker-based laws run the risk that "the State has left unburdened those speakers whose messages are in accord with its own views.")

Finally, the City's proposed 40% rule would lead to absurd results. The logical extension of the rule would justify a 36-minute disclaimer in the 90-minute *Hillary* movie at issue in *Citizens United*. It would also mean that the timing, size, and content of a disclaimer will vary widely depending on the speaker. Committee A, whose video disclaimer comes in at 42%, would be excused from speaking the entire disclaimer and would not have to include secondary contributors. Committee B, whose video disclaimer comes in at 38%, would have to speak the entire disclaimer *at the beginning* of its ad and include secondary contributors. It makes no sense to treat these two committees so differently. Moreover, the City's proposed rule undermines its argument that these disclaimers are so necessary, since disclaimers would vary so much for reasons completely unrelated to the underlying rationale for the disclaimer rules.

## II.  THE SECONDARY CONTRIBUTOR RULE DOES NOT SURVIVE EXACTING SCRUTINY

### A.  The Secondary Contributor Rule Severely Burdens First Amendment Rights

On the one hand, the City argues that the secondary contributor rule does not burden First Amendment rights because it "does not actually force anyone to involuntarily associate with anyone else." Opp. at 13. Yet on the other hand, to justify the secondary contributor rule in the first place, the City argues that the disclosure of secondary contributors reveals the "true speakers" behind political

---

[5] Under state law, a visual disclaimer must also appear on any video ads, making the spoken disclaimer redundant. Cal. Gov't Code § 84504.1(a).

advertisements and provides the voters with "critical information" concerning "the interests supporting or opposing a ballot proposition or candidate." *Id.* at 12. The City cannot have it both ways: it cannot argue that Prop. F does not force Yes on Prop B to publicize an association with secondary contributors that does not exist while at the same time argue that the secondary contributor rule is necessary to show who is really behind Yes on Prop B's ads. In truth, many voters will believe that these secondary contributors have associated with Yes on Prop B and endorsed its political message; that is the entire purpose of the secondary contributor rule as explained by the City.

For this reason, the City's insistence that plaintiffs should have offered evidence of voter confusion misses the mark,[6] since the City's argument makes the point. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008) also supports plaintiffs here. *See* Opp. at 13-14. In that case, a candidate could self-identify their "party preference" on the state's primary ballot, and the Washington Republican Party sued on the grounds that this self-selected designation would suggest that some candidates were the party's actual nominees. Under Washington law, however, the party preference attributed to a candidate was just that: a preference, and the law was not designed to suggest to the voting public that the candidates had been endorsed by the party or selected as its official nominee. *See id.* at 447 (law permitted a candidate to self-identify and prohibited political parties' interference with candidates' self-designation). The specter of voter confusion was therefore insufficient; proof was required and the court left open the possibility of a future challenge if such confusion materialized. *Id.* at 457-58. In contrast, the entire point of Prop. F's secondary contributor rule, according to the City, is to show the public that these contributors are the "true speakers" behind plaintiffs' political ads, even though they are not. Voters will not just be confused – they will be misled by Prop. F.

The City's attempt to cast doubt over *California Republican Party v. Fair Political Practices Commission*, No. CIV-S-04-2144, 2004 U.S. Dist. LEXIS 22160 (E.D. Cal. Oct. 27, 2004) is

---

[6] The City's objections to Margaret Muir's declaration are ill-founded, given her years of experience as the primary political consultant on San Francisco ballot measure campaigns. *Compare* Opp. at 14-15 *with* Declaration of Margaret Muir, ¶¶ 2-8; *see also* n.7, *infra* (evidence that would be inadmissible at trial may be considered on motion for preliminary injunction). But in any event, the City has conceded the conclusion it is objecting to: that attributing speech to secondary contributors will tie them to the message in the ad.

also unconvincing. The City ignores the Court's concern that requiring ads to identify specific contributors "may prejudice voters against the position advocated," *id*. at *12, and that on-advertisement disclosure of contributors' identities could mislead the voters into believing that the contributors supported specific positions when they in fact did not, *id*. at *19. Instead, the City makes the obvious point that there is a closer nexus between contributors to primarily formed committees and the message of that committee. Opp. at 15. But that is not the issue here. Plaintiffs are not challenging the listing of the top-three contributors; they only are challenging the identification of the contributors *to contributors* that end up giving to Yes on Prop B; this receiving committee is often a general purpose PAC. And on that question, *California Republican Party* is squarely on point: contributors to committees, particularly general purposes committees like political parties, the Realtors Association or the Committee on Jobs that take positions on multiple issues and candidates, often do not know how that committee will ultimately spend its funds. *See id*. at 13. The Eastern District thus determined that "it is not difficult to imagine a situation in which the contributor will be identified as a major donor on an advertisement containing political message with which the contributor does not agree. To the contrary, it seems nearly inevitable . . . ." and ultimately enjoined Prop. 208's requirement that political parties include the names of contributors on their ads. *Id*. at 13, 16. The same reasoning holds here.

      Plaintiffs have also shown that the secondary contributor rule has chilled their ability to associate with other likely political allies. The City's mischaracterization of this point should be rejected. It is not that potential donor "committees may not wish to disclose their contributors, and therefore will feel reluctant to donate to Yes on Prop. B," nor is it that a "chill [ ] exists simply [ ] from political committees' desire to keep the voters in the dark about their major donors." Opp. at 16. Again, state law mandates that all of the potential donor committees' major donors **are already disclosed to the public**. The concern is that their own donors – who have not associated with plaintiffs – will be identified on Yes on Prop B's ads by virtue of the committee's support for Yes on Prop B. Memorandum of Points and Authorities in Support of Preliminary Injunction ("MPA") at 20.[7]

---

[7] The City's objection to Mr. David's declaration misses the forest for the trees. Opp. at 17. Mr. David, a campaign officer with years of experience and relationships with political allies, has been unable to fundraise as he otherwise would have due to the secondary contributor rule (Declaration of Todd David, ¶ 23), and in the context of this motion, the "court may consider hearsay and other evidence that would otherwise be inadmissible at trial." *Virtue Glob. Holdings Ltd. v. Rearden LLC*, No. 15-cv-

### B. The City Has Not Provided a Sufficiently Important Governmental Interest to Justify the New Secondary Contributor Rule

The City's defense of the secondary contributor rule hinges on its claim that the rule informs the public about the "true speakers" in political ads. *See*, *e.g.*, Opp. at 1, 7. In particular, the City claims, the provision is needed to fight cases where committees have tried to obscure the sources of their funding. *See id*. at 11. However, this concern is largely hypothetical and the only concrete example the City provides in support of its claim that the secondary contributor rule is necessary – that two other committees accepted funding from an organization called "Progress San Francisco" that was "largely funded by developer and tech interests" (*id.* & n.4) – proves exactly the opposite. Other than the City's bald assertion, it presents no evidence of circumvention.[8] And precisely because Progress San Francisco was identified as a top contributor on those committees' communications, and because information about Progress San Francisco's funding sources was disclosed in campaign reports well before the election, as required, SF Weekly and the SF Examiner published articles identifying those funding sources *six weeks before the election*.[9]

Moreover, while the City cites to cases that broadly expound on the public's informational interest, none of these cases dealt with the inclusion of primary, let alone secondary, contributors on the face of the advertisement. Most of the cases involved the disclosure of the identity of donors on public disclosure reports filed with campaign finance regulators. *See Family PAC v. McKenna*, 685 F.3d 800 (9th Cir. 2012); *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003); *ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197 (E.D. Cal. 2009). The validity of disclosure law of course is not at issue here, and the City's reliance on those cases is misplaced. Requiring disclosure of campaign finance activities on public reports does not displace political speech, imposes only a minimal burden on First Amendment rights, and "offers a particularly effective means of arming the voting public with information." *McCutcheon v. FEC*, 572 U.S. 185, 224 (2014).

---

00797-JST, 2016 U.S. Dist. LEXIS 79442, at *12-13 (N.D. Cal. June 17, 2016) (citing *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009)).

[8] The City's characterization that plaintiffs would like to conceal their true funding sources is similarly misguided. Opp. at 11. Plaintiffs merely wish to ensure that only *their true funding sources* be included on their political advertisements, not organizations from whom they have received no contributions, or from whom they have sought no contributions.

[9] These newspaper articles are inadmissible hearsay under Federal Rule of Evidence 802 to the extent that they are introduced to prove the truth of the statements contained therein.

PLS.' REPLY IN SUPPORT OF MOT. FOR
PRELIM. INJ. – NO. 3:20-cv-00630

9

On-ad disclaimers are different. *ACLU of Nevada v. Heller*, cited by the City, stands for this very proposition, recognizing that disclaimer requirements are "considerably more intrusive" than disclosure requirements, and that disclosure requirements "serve considerably more effectively the goal of informing the electorate of the individuals and organizations supporting a particular candidate or ballot proposition." 378 F.3d 979, 992, 994 (2004); *but see Yamada v. Snipes*, 786 F.3d 1182, 1203 n.14 (9th Cir. 2015) (recognizing that *Citizens United* upheld a disclaimer law requiring speakers in political advertisements to identify themselves). Moreover, the few cases cited by the City that upheld on-ad disclaimers bear no resemblance to what Prop. F requires. All required only that the speaker identify *itself* and whether the ad had been approved by a candidate. None support the notion that a disclaimer may go further, requiring lists of some of its contributors or amounts contributed, much less those contributors' separate contributors or amounts contributed to others. *See Citizens United*, 558 U.S. at 368-69; *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990 (9th Cir. 2010) (disclaimer required speakers to identify only themselves and that independent expenditures had not been approved by candidates); *Alaska Right to Life Committee v. Miles*, 441 F.3d 773 (9th Cir. 2006) (same); *Yamada*, 786 F.3d 1882 (same). At most, these cases stand for the uncontroversial point that under the exacting scrutiny standard, a speaker may be compelled to identify themself when engaging in political speech. By requiring speakers to identify contributors twice-removed alongside amounts contributed to others, the secondary contributor rule lies much further from the public's core informational interest in knowing who is speaking, and imposes a much more significant burden on plaintiffs.

### C. The Secondary Contributor Rule Is Poorly Tailored to Advance the City's Stated Goal

It is not enough for the City to assert that "the secondary contributor rule advances an important governmental interest"; it also bears the burden of showing that the secondary donor requirement is substantially related to achieving that purpose and that the means employed "avoid unnecessary abridgement of First Amendment rights." *Compare* Opp. at 11-12 *with McCutcheon*, 572 U.S. at 199. The City fails to do that here.

First, existing law already amply achieves the goals the City claims it is pursuing. The City already requires that the sponsor of an advertisement disclose its top three contributors over

$10,000.  And as the City concedes, the information that Prop. F requires about secondary contributors is already in the public record by virtue of California's comprehensive campaign finance reporting requirements.  *See* Opp. at 17.

Moreover, to the extent the City is concerned that committees are funneling money through intermediary committees in order to obscure their true funding sources, California law already prohibits that.  If a committee receives a contribution earmarked for a contribution to another committee and uses those funds to donate to that other committee, it must inform the ultimate recipient of the true source of the contribution; and the ultimate recipient must report the original contributor as the true source of any earmarked funds and the "pass through" committee as an intermediary.  Cal. Gov't Code § 85704.  Violators are subject to criminal and civil penalties.  SF Code § 1.170; Cal. Gov't Code §§ 91000, 91004.

While the City asserts that plaintiffs have failed to provide "authority for the proposition that the City cannot require disclaimers merely because the information provided is already 'part of the public record,'" Opp. at 17, the existence of other disclosure laws, or the potential to enact a less restrictive alternative, are integral to the tailoring analysis.  *See McCutcheon*, 572 U.S. at 200 (evaluating the aggregate contribution limit at issue in light of the preexisting regulatory scheme and concluding that other regulations in effect obviated the government's stated need for the limit).  The solution to the so-called "dark money"[10] problem Prop. F was allegedly designed to address is already available, and it is working.

Second, while the City claims that the goal of the secondary contributor requirement is to identify the "true speaker," it is poorly tailored to that end because secondary contributors are *not* the true speakers.  *All* of Yes on Prop B's secondary contributors made contributions *to other committees when Yes on Prop B did not yet exist*.  For example, Chris Larsen could not have known that by donating

---

[10] The suggestion that Prop. F shines a light on "dark money" is incorrect.  *See* Opp. at 11.  "Dark money" refers to money, typically contributed to nonprofit organizations, that is used to fund campaign ads without the public reporting of the contributors' identities.  *See*, *e.g.*, Richard Briffault, *What is Dark Money?  5 Questions Answered*, COLUMBIA LAW SCHOOL (Oct. 30, 2019), https://www.law.columbia.edu/news/2019/10/richard-briffault-what-is-dark-money (last visited February 9, 2020).  Prop. F requires that disclaimers include information that is already publicly reported on campaign statements filed with the San Francisco Ethics Commission or another applicable filing officer.  Accordingly, all of the contributions at issue in this case have been fully reported pursuant to the Political Reform Act and are not "dark money."

to Yes on A on August 1, 2019, that contribution would be used to support Yes on Prop B, in December 2019, and that his name would have to appear on Yes on Prop B's advertisement in February 2019. None of these contributors is in any way a "true speaker" behind plaintiffs' ads.

Nor is the information the secondary contributor rule provides sufficiently helpful to voters to warrant the burdens it places on plaintiffs. To wit: Yes on Prop B received $5,000 from Yes on Prop A. Yes on Prop A in turn received $300,000 from its top contributor, Salesforce.com, Inc. But Yes on Prop A also received a total of $2,841,000 in contributions throughout all of 2019. Mainardi Decl., ¶ 4. Thus, Salesforce's contribution amounted to 10.6% of Prop A's total receipts, which in turn means Salesforce's pro rata share of the $5,000 that went to Yes on Prop B is a mere **$530**.[11] Despite that, plaintiffs must identify Salesforce as having given Yes on Prop A $300,000, without giving the voter any context of how much or little that actually represents of the contribution that went to Prop. B. Listing Salesforce with $300,000 next to it on Yes on Prop B's ads is at best seriously misleading and at worst outright false.

Worse still, Prop. F's disclaimer provides no indication of *when* secondary contributions occurred, leaving voters unable to evaluate whether those secondary contributors are likely the true speakers. For example, plaintiffs' disclaimer is silent as to how close in time Chris Larsen's contribution to Yes on A was relative to Yes on A's contribution to Yes on Prop B. Yet by requiring speakers to identify secondary contributors who gave up to a year ago without distinction, the disclaimer creates the misleading impression that secondary contributions occurred close in time to the political message in the ad, when in fact Mr. Larsen's donation to Yes on A occurred on August 1, 2019, a whole election cycle away from Yes on Prop B. Mainardi Decl., ¶ 12.

Finally, there are far less burdensome ways of disclosing a committee's secondary contributors than requiring plaintiffs to place a mini-campaign finance report on their ads. *See Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 876-77 (8th Cir. 2012) (striking

---

[11] On this point, *Citizens Union of City of New York v. Atty. General of New York*, 408 F. Supp. 3d 478 (S.D.N.Y. 2019) remains instructive. In *Citizens Union*, the court determined that there was no substantial government interest in informing the public about the identities of nonprofit donors when their donations could not have contributed significantly to a second entity's lobbying activities. Just as in that case, donations from secondary donors are far too attenuated, and the connection between secondary donors and plaintiffs too speculative, to justify the burden on plaintiffs' speech.

PLS.' REPLY IN SUPPORT OF MOT. FOR               12
PRELIM. INJ. – NO. 3:20-cv-00630

down "onerous" reporting requirements because the state could "accomplish any disclosure-related interests . . . '[t]hrough less problematic measures'"). For example, state law requires that statewide ballot measure committees receiving more than $1 million in contributions must file one additional summary report with the Fair Political Practices Commission ("FPPC") disclosing their top ten contributors of $10,000 or more. Cal. Gov't Code § 84223. For any top-ten contributor that is a committee, its own top two "secondary" contributors of $50,000 or more must also be reported on the same report. 2 Cal. Code of Regs. § 18422.5. These reports must be updated within three business days of any change or, within the 16 days prior to the election, within two business days. *Id.* The top ten lists are then posted on the websites of the FPPC and the Secretary of State, with top two "secondary" contributors accessible via a link to a separate webpage. *See* Mainardi Decl., ¶¶ 5-6, Exs. F, G. A similar requirement would be far less burdensome than Prop. F.

## III. THE CITY'S SPOKEN DISCLAIMER RULE IS UNCONSTITUTIONAL

Before the passage of Prop. F, the City's Board of Supervisors adopted an ordinance that in part required all disclaimers for audio and video ads be spoken. *See* City's Request for Judicial Notice, Ex. A at 23 (SF Code § 1.161(a)(5)). The spoken disclaimer could be at the end of the ad, but the law has always required the *full disclaimer* to be spoken. Thus, unlike the State's spoken disclaimer rule, it (1) applies even in the case of video ads (where the information is already conveyed visually with less impact on the speaker) and (2) contains no provisions that allow for an abbreviated disclaimer if it takes up too much of a speaker's message. *Cf.* Cal. Gov't Code § 84504. That is what makes the spoken disclaimer unconstitutional on its own: for even those committees that do not have to disclose secondary contributors, the spoken disclaimer will still be unduly burdensome in virtually every situation. For example, the other committee formed to support Prop. B does not have to disclose any secondary contributors. Nonetheless, based on its print mail that the City submitted in this case, the committee's spoken disclaimer would amount to the following:

> Ad paid for by Yes on B, sponsored by the San Francisco Firefighters Local 798. Committee major funding from: 1. Christian Larsen, 2. San Francisco Firefighters Local 798 PAC, 3. San Francisco Police Officers Association Issues PAC. Financial disclosures are available at sfethics.org.
>
> Declaration of Patrick Ford, Ex. A.

That takes approximately 17 seconds to speak, meaning that it would comprise 57% of a 30-second video or radio ad.  Mainardi Decl., ¶ 8.  Take one of those major donors off and it would still take approximately 14 seconds to speak and take up 47% of the air time; take two major donors off, leaving just one major donor, and it takes approximately 10 seconds to speak the disclaimer and 30% of the air time.  *Id.*, ¶¶ 9-10.  Thus, as this exercise makes clear, the spoken disclaimer will take between approximately 33-57% of ad time for *any committee* that has one or more major donors.

Moreover, now that Prop. F has lowered the threshold for a major donor to $5,000, virtually all committees will likely have at least one, and probably three major donors.  That was certainly the case during the November 2019 City election, when four primarily formed ballot measure committees had three major donors meeting Prop. F's major donor threshold, two had two major donors, and three had one major donor.  Mainardi Decl., ¶¶ 13-14.  In other words, all nine of the 2019 committees would likely have faced a spoken disclaimer of at least 30% in a 30-second ad if Prop. F had been in effect then.

The City's argument that the spoken disclaimer rule is only unconstitutional as applied to some of plaintiffs' ads is simply not credible.  It is facially unconstitutional and should be enjoined.

### IV. THE COURT SHOULD ENJOIN THE SPOKEN DISCLAIMER AND PROP. F'S DISCLAIMER LAWS IN THEIR ENTIRETY

The City tries to limit the damage of its admission that Prop. F is unconstitutional in many applications by arguing that the Court should either enter an injunction that applies to plaintiffs or that doesn't strike down the spoken disclaimer and Prop. F disclaimer laws on their face.  Opp. at 22.  Both arguments should be rejected.

In arguing for a narrow injunction that applies only to plaintiffs, the City ignores the very real confusion and chilling effect such a ruling would have on the participants in the March election and beyond.  Every committee that is about to advertise and is facing a disclaimer rule that no longer applies to plaintiffs must nonetheless comply with the rule, intervene in this case to get its own factual ruling, or face possible criminal or administrative penalties.  That is not how the First Amendment works.  *Citizens United*, 558 at 324 ("The First Amendment does not permit laws that force speakers to retain a

campaign finance attorney . . . or seek declaratory relief before discussing the salient political issues of the day.").

The City also urges the Court not to enjoin the spoken disclaimer and Prop. F in their entirety. As the foregoing analysis demonstrates, plaintiffs have shown that those laws are unconstitutional in a substantial number of applications. Moreover, the City's argument ignores the Supreme Court's reasoning in similar circumstances in *Citizen United*. There, the issue was whether a movie sponsored by the plaintiffs, a corporation, could be prohibited by a law barring political advertisements by corporations. *Id.* at 319. Plaintiff proffered several arguments as to why the ban should not apply to it under the specific facts of the case, *id.* at 326, but the Court determined that seriatim decisions on various factual bases would only lead to uncertainty and the chilling of speech. *Id.* at 327. Moreover, the compressed time period of the election cycle favored facial review: "It is well-known that the public begins to concentrate on elections only in the weeks immediately before they are held. These are short timeframes in which speech can influence. . . . A speaker's ability to engage in political speech that could have a chance of persuading voters is stifled if the speaker must first commence a protracted lawsuit." *Id.* at 334. For these reasons, the Court invalidated the statute on its face. *Id.* at 336. Those same considerations are present here.

The bottom line is that if the Court grants plaintiffs' motion, state and local laws still require Yes on B's disclaimers to include all of the following:

**Ad paid for by Yes on Prop. B, Committee in Support of the Earthquake Safety and Emergency Response Bond. Committee major funding from:**
**United Democratic Club of San Francisco**
**Edwin M. Lee Democratic Club**
**Yes on A, Affordable Homes for San Franciscans Now!**
**Financial disclosures are available at sfethics.org.**

The City has failed to make the case why it should take any more space from plaintiffs' political message to add more information of dubious relevance. The Court should grant the motion.

| | | |
|---|---|---|
| 1 | Dated: February 11, 2020 | Respectfully submitted, |
| 2 | | OLSON REMCHO, LLP |
| 3 | | MAINARDI LAW |
| 4 | | By: /S/ Thomas A. Willis |
| 5 | | Attorneys for Plaintiffs Yes on Prop. B, Committee in Support of the Earthquake Safety and Emergency Response Bond and Todd David |

(00402182-8)