1  JONATHAN GOLINGER, State Bar #271788

2  708 Montgomery Street
   San Francisco, CA 94133
3
   Telephone:  (415) 531-8585
4  E-mail:  JonGolinger@gmail.com

5  Attorney for *Amicus Curiae*
   Peter Keane
6
                    **UNITED STATES DISTRICT COURT**
7
                 **NORTHERN DISTRICT OF CALIFORNIA**
8

9
   YES ON PROP. B, COMMITTEE IN            )  Case No. 3:20-cv-00630 CRB
10 SUPPORT OF THE EARTHQUAKE               )
   SAFETY AND EMERGENCY RESPONSE           )
11 BOND and TODD DAVID,                    )
                                           )  MOTION FOR LEAVE TO FILE BRIEF
12            Plaintiffs,                   )  *AMICUS CURIAE* AND BRIEF *AMICUS*
                                           )  *CURIAE* OF PETER KEANE IN SUPPORT
13       vs.                               )  OF DEFENDANT'S OPPOSITION TO
                                           )  PLAINTIFF'S MOTION FOR
14 CITY AND COUNTY OF SAN                  )  PRELIMINARY INJUNCTION
   FRANCISCO,                              )
15                                          )  Hearing Date:   February 14, 2020
             Defendant.                     )  Time:           10:00 a.m.
16                                          )  Judge:          The Hon. Charles R. Breyer
                                           )  Place:          Courtroom 6, 17th Floor
17                                          )                  450 Golden Gate Avenue
                                           )                  San Francisco, CA
18                                          )
                                           )  Attachments:
19                                          )  -- Exhibits A-F
   ─────────────────────────────────      )

20

21

22

23

24

25

26

27

28

**MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF**

Peter Keane hereby requests permission to file the attached *amicus curiae* brief in support of Defendant City and County of San Francisco's Opposition To Plaintiffs' Motion for Preliminary Injunction.

Peter Keane is the former Chairman of the San Francisco Ethics Commission, which he served on for five years, from 2013 to 2018, and was a co-author of Proposition F, the voter-approved "Sunlight On Dark Money" ballot initiative being challenged by Plaintiffs.

Based on this experience, *Amicus Curiae* believes that the proposed *amicus curiae* brief will assist the Court in properly resolving this critically important matter.  *Amicus Curiae* does not seek to duplicate arguments set forth in the parties' briefs.  Rather, *Amicus Curiae* seeks to assist the Court in deciding this matter by demonstrating through his independent arguments that Plaintiffs' requested relief of a preliminary injunction against enforcement of all five of Proposition F's campaign advertisement disclaimer requirements is 1) not supported by the law; 2) not supported by the facts; and 3) so overbroad that it seeks to strike down important components of Proposition F that Plaintiffs do not even allege cause them harm.

Accordingly, *Amicus Curiae* respectfully requests that the Court grant this motion and accept the accompanying proposed *amicus curiae* brief for filing in this matter.

DATED: February 12, 2020

Respectfully Submitted,

By:    /S/ Jonathan Golinger

Jonathan Golinger

Attorney for *Amicus Curiae*
Peter Keane

**STATEMENT OF INTEREST**

Peter Keane is the former Chairman of the San Francisco Ethics Commission, which he served on for five years, from 2013 to 2018.  Mr. Keane was a co-author of Proposition F, the voter-approved "Sunlight On Dark Money" ballot initiative being challenged by Plaintiffs.  He is Professor of Law Emeritus and Dean Emeritus of Golden Gate University School of Law, former President of the Bar Association of San Francisco, former Vice–President of the State Bar of California, and was the Chief Assistant Public Defender of San Francisco from 1978 to 1998.

Mr. Keane believes that this brief will be helpful in the Court's consideration of whether Plaintiffs' requested relief of a preliminary and permanent injunction against enforcement of all of Proposition F's campaign advertisement disclaimer requirements is 1)  supported by the law; 2) supported by the facts; and 3) appropriate or so overbroad that it seeks to strike down important components of Proposition F that Plaintiffs do not even allege cause them harm.


**ARGUMENT**

I. **Proposition F's five disclaimer laws fit within the framework of *Citizens United* and provide voters with useful information without preventing anyone from speaking.**


On November 5, 2019, San Francisco overwhelmingly voters approved the Sunlight On Dark Money Initiative, formally known as Proposition F ("Prop. F").  In addition to enacting new campaign contribution limits and disclosure rules, Prop. F strengthened the campaign advertisement disclaimer requirements for ballot measure committees and independent expenditure committees that support or oppose candidates for office in San Francisco.  Only the campaign advertisement disclaimer requirements of Prop. F are being challenged by Plaintiffs.

The authors of Proposition F designed its disclaimer provisions to provide useful information to voters within the framework provided by the Supreme Court and Ninth Circuit. *See, eg., Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 371 (2010) ("disclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way"); *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1008 (9th Circ. 2010) ("Campaign finance disclosure requirements thus advance the important and well-recognized governmental interest of providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace of ideas.").

When voters approved Prop. F, they added five distinct new campaign advertisement disclaimer requirements to San Francisco Campaign & Governmental Conduct Code Section 1.161. The five new Prop. F disclaimer requirements are: 1) the disclaimers on audio and video advertisements must be spoken at the beginning, rather that at the end, of such advertisements; 2) lowering the triggering threshold from $10,000 to $5,000 for a campaign donor to be listed as a "top three contributor" to a committee in its campaign advertisements; 3) requiring that the dollar amount contributed by the top contributors to a committee be listed in the disclaimer next to the donor's name; 4) increasing the font size of disclaimers on mass mailings and written advertisements from 12 point font to 14 point, bold font; and 5) requiring that, if any of the top three contributors to a committee is itself a committee, the top two donors to that committee – the "secondary contributors" – must also be listed in disclaimers on campaign advertisements.

The five Prop F. disclaimer requirements operating independently, and together as a whole, provide voters with information useful to assist them in evaluating the credibility and content of campaign advertisements they receive that promote or oppose ballot measures or candidates for office. By moving the spoken disclaimer from the end to the beginning of audio

and video ads, Prop. F empowers voters not to have to blindly listen but instead to be able to evaluate the content of campaign ads with a clear understanding of who the messenger is, just as they can do when hearing a candidate give a speech or seeing them in a debate.  By lowering the threshold for major donor disclosure to $5,000, Prop. F better ensures that major donors to a committee are disclosed to voters when they consider the committee's campaign ads.  Including the dollar figure of a committee's major donors alongside their name provides voters with a tangible data point to evaluate the magnitude of a committee's support from its biggest donors. That may be just as, and in some cases more, informative for voters than the donor's name. Slightly increasing the font size and bolding major donor information allows voters to actually read it.  Requiring "secondary contributor" disclosure provides voters specific information about funders rather than just an amorphous name of a made-up committee that itself has no meaning.

As its authors intended and voters decided, Proposition F's disclaimer provisions are designed to give voters real time information that "enables the electorate to make informed decisions and give proper weight to different speakers and messages."  *Citizens United*, 558 U.S. at 371.  This is true for each of Prop. F's five disclaimer provisions standing alone, and together.

## II.      Complying with Proposition F's disclaimer requirements has not impaired the official "Yes on Proposition B" ballot measure campaign committee or other March 2020 campaign committees from freely communicating their messages to voters.

Plaintiffs' core argument against Prop. F is that the required disclaimers would occupy so much space or time in their "Yes on Prop. B" campaign advertisements that it would "effectively bar them" from communicating their message urging voters to support the earthquake safety and emergency response bond on the March 2020 San Francisco ballot. (MPA at 1).  However, the

Court need look no further than to the campaign mailings, newspaper advertisements, and campaign website of the official Yes on Proposition B campaign committee to see that Plaintiffs' argument is neutered by the proponents of the very measure they purport to support.  Moreover, the campaign advertisements for other March 2020 election campaign committees demonstrate that compliance with Proposition F's disclaimer requirements does not impair free speech rights.

### A.    The official "Yes on B" campaign committee is complying with Prop. F.

The official ballot measure committee backing Proposition B on the March 2020 ballot is called "Yes on B, San Franciscans for Fire, Earthquake and Disaster Preparedness, sponsored by San Francisco Firefighters Local 798."  According to a letter sent to Plaintiffs dated February 11, 2020 by the Principal Officer of the official "Yes on B" committee, that committee "has made every effort to fully comply with the requirements of 2019's Proposition F."  (Ex. A)  That effort is made evident by a newspaper advertisement sponsored by the official "Yes on B" committee that includes the required Prop. F disclaimers without any apparent impairment of the ability of the "Yes on B" committee to communicate its message to voters.  (Ex. B)  Similarly, a four-page mailer sent to San Francisco voters by the official "Yes on B" committee includes the required Prop. F disclaimers without any apparent unconstitutional burden on its speech.  (Ex. C)  Lastly, the public campaign website of the official "Yes on B" committee includes the required Prop. F disclaimers without any apparent unconstitutional burden on its speech.  (Ex. D)

### B.    Other March 2020 campaign committees are complying with Prop. F.

Just as the official "Yes on B" committee is complying with Prop. F's disclaimer requirements with no impairment of its ability to speak, other March 2020 ballot measure committees are doing the same.  For example, the website and campaign advertisements of both sides of the debate over Proposition E on the March 2020 ballot are complying with Prop. F

without any unconstitutional speech burdens.  The campaign website of "Housing Forward SF, Yes on E" and a 30 second campaign video advertisement featured on its website fully comply with the Prop. F disclaimer requirements with no apparent speech burden.  (Ex. E)  Similarly, the "No on Prop E, Committee to Protect Affordable Housing" campaign website features the required Prop. F disclaimers, including a "secondary contributor" disclaimer, without any unconstitutional burden on its speech.  (Ex. F)

**III.**    **Plaintiffs' requested relief is so overbroad that it would strike down Prop. F disclaimer requirements that Plaintiffs do not even allege cause them harm.**

Plaintiffs offer argument and information in support of their contention that the "secondary contributor" disclaimer requirement could harm their First and Fourteenth Amendment rights by requiring a disclaimer that, in their view, would occupy too much real estate in their campaign advertisements.  However, Plaintiffs' requested relief would strike down not just the "secondary contributor" disclaimer requirement but all five of Prop. F's disclaimer requirements.  Plaintiffs put forth no support for a claim that, aside from the "secondary contributor" requirement, any of the other four components of the Prop. F disclaimer rules would individually or collectively harm Plaintiff's constitutional free speech rights.

Nor could they.  Setting aside the secondary contributor disclaimer requirement, the other four components of the Prop. F disclaimer requirements either have zero impact or negligible impact on the content and size of campaign advertisement disclaimers, which lies at the heart of Plaintiffs' claim.  Prop. F's requirement that major donor disclaimers be provided to viewers at the beginning, rather than the end, of video and audio advertisements in and of itself adds exactly

zero content to the ads and has zero impact on the length of campaign advertisements.  Similarly, Prop. F's lowering of the dollar threshold that qualifies a contributor as a major donor from $10,000 to $5,000 is simply about *who* must be listed, not about *how* they are described or *what* the campaign ad disclaimers must say.  This, too, adds zero new content to Plaintiffs' ads and has zero impact on the size or length of their campaign advertisements.  The Prop. F requirements that the dollar amount contributed by major donors be listed and that the typeface of disclaimers be put in bold at a slightly larger size add only negligibly to the size of ad disclaimers.  Plaintiff offers no argument or evidence that any of these Prop. F disclaimer rules burden their rights.

Yet, in the relief sought by Plaintiffs, although they focus almost entirely on the alleged burden of the secondary contributor requirement, Plaintiffs ask the Court to nullify the Prop. F disclaimer rules in their entirety and to strike down all five of the above-mentioned provisions.  Given that Plaintiffs have offered no meaningful challenge to four of the five Prop. F disclaimer provisions, any injunction against enforcement of Prop. F's disclaimer requirements should not inadvertently sweep in everything.  Any injunction should be limited to the enforcement of the secondary contributor rule as applied to Plaintiffs' small advertisements where the secondary contributor requirement would cause the disclaimer to consume more than 40% of the ad.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion for Preliminary Injunction against the enforcement of all of Proposition F's disclaimer requirements.

Dated:  February 12, 2020

Respectfully Submitted,


By:     /S/ Jonathan Golinger

Jonathan Golinger


Attorney for *Amicus Curiae*

Peter Keane

MOTION FOR LEAVE TO FILE
BRIEF *AMICUS CURIAE* AND BRIEF *AMICUS CURIAE*
CASE NO.: 3:20-cv-00630 CRB