IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YES ON PROP B, COMMITTEE IN SUPPORT OF THE EARTHQUAKE SAFETY AND EMERGENCY RESPONSE BOND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Case No. 20-cv-00630-CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY INJUNCTION** |

Yes on Prop B, Committee in Support of the Earthquake Safety and Emergency Response Board, contends that the City and County of San Francisco's new disclaimer requirements create an unconstitutional burden on its First Amendment right to advocate for earthquake safety. The Court agrees that the disclaimer rules are unconstitutional as applied to some smaller or shorter types of advertising, because they leave effectively no room for pro-earthquake safety messaging. But the rules are not an unconstitutional burden on larger or longer advertising, and requiring the committee to disclose not only its own donors but also the individuals and organizations who give money to committees that in turn support Yes on Prop B is not an unconstitutional forced association or burden on campaign contributions.

**I.      BACKGROUND**

Under California law, any person or group of people that raises at least $2,000 or spends at least $1,000 for political purposes in a given year must register as a committee. Cal. Gov't Code § 82013. Political advertising by committees is subject to a plethora of disclaimer and disclosure

requirements under California and San Francisco law. See, e.g. Cal. Gov't Code §§ 84200, 84200.5, 84202.3, 84203, 84502; see also, e.g. SF Code § 1.161.

This case concerns two new disclaimer requirements for committee advertising that went into effect in San Francisco last year. First, the San Francisco Board of Supervisors amended San Francisco's Campaign and Governmental Conduct Code to require a spoken disclaimer at the beginning (rather than the end) of any audio or video advertisement. See SF Code § 1.161(a)(5); see also Yes on Prop B RJN[1] (dkt. 5-1) Ex. B.

Last November, San Francisco voters amended the City's disclaimer laws by approving Proposition F. See generally Yes on Prop B RJN Ex. C at 112–13. Proposition F passed with 76.89% of the vote. San Francisco RJN Ex. B at 6. Now, all ads paid for by "primarily formed" independent expenditure and ballot measure committees[2] must include a disclosure identifying the committee's top three donors of $5,000 or more. If one of those contributors is itself a committee, the ad must also disclose that committee's top two donors of $5,000 or more in the last five months. In all ads other than audio ads, the names of both primary and secondary contributors must be followed by the amount of money they contributed. Id.; SF Code § 1.161(a)(1), (5). On written ads, the disclosure must be in 14-point font (rather than 12-point font, which was the case before Proposition F). RJN Ex. C at 112; SF Code § 1.161(a)(3).

Yes on Prop B is a "primarily formed committee" which supports Proposition B.[3] David Decl. (dkt. 5-5) ¶ 6. Yes on Prop B has received $5,000 in funding from each of three other committees: Yes on A, Affordable Housing for San Franciscans Now!, the Edwin M. Lee Democratic Club Political Action Committee, and the United Democratic Club of San Francisco.

---

[1] Yes on Prop B's request for judicial notice is unopposed and asks for notice of three documents made publicly available by San Francisco or the State of California. Because these documents come from sources whose accuracy cannot reasonably be questioned, Yes on Prop B's request is granted. See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010). San Francisco has also requested that the Court notice publicly available documents, plus a municipal ordinance. San Francisco RJN (dkt. 20). San Francisco's request is also granted. See id.; see also Tollis, Inc. v. Cty. of San Diego, 505 F.3d 935, 938 n.1 (9th Cir. 2007). Finally, the unopposed motion to file an amicus curiae brief (dkt. 24) is granted. See also Statement of Non-Opposition (dkt. 26).
[2] A "primarily formed" committee is one created to support or oppose a single candidate or measure appearing on the ballot. Cal. Gov't Code § 82047.5.
[3] Proposition B is an earthquake safety and emergency response bond. David Decl. ¶ 8.

2

Id. ¶ 12. Yes on Prop B wishes to spend its modest budget on cost-effective forms of advertising, including six-, fifteen-, and thirty-second digital video advertisements, yard or window signs, and Chinese language newspaper ads. Id. ¶ 29, Mot. (dkt. 5) at 1.

Those ads will be subject to Proposition F's new disclaimer requirements. Yes on Prop B's video ads must include the following disclaimer, spoken at the beginning of the video:

> Ad paid for by Yes on Prop B, Committee in support of the Earthquake Safety and Emergency Response Bond. Committee major funding from: 1. United Democratic Club of San Francisco – contributors include San Francisco Association of Realtors, Committee on Jobs Government Reform Fund; 2. Edwin M. Lee Democratic Club Political Action Committee – contributors include Committee on Jobs Government Reform Fund; 3. Yes on A, Affordable Homes for San Franciscans Now! – contributors include Salesforce.com, Inc., Chris Larsen. Financial disclosures are available at sfethics.org.

Muir Decl. (dkt. 5-3) ¶ 34. That disclaimer takes roughly twenty-eight seconds to read "in a clearly spoken manner and in a pitch and tone substantially similar to the rest of a typical television advertisement." Id. ¶ 35.

Print ads must include the following disclosure:

> <u>Ad paid for by Yes on Prop B, Committee in Support of the Earthquake Safety and Emergency Response Bond. Committee major funding from:</u> 1. United Democratic Club of San Francisco ($5,000) – contributors include San Francisco Association of Realtors ($6,500), Committee on Jobs Government Reform Fund ($5,000), 2. Edwin M. Lee Democratic Club Political Action Committee ($5,000) – contributors include Committee on Jobs Government Reform Fund ($5,000), 3. Yes on A, Affordable Homes for San Franciscans Now! ($5,000) – contributors include Salesforce.com, Inc. ($300,000), Chris Larsen ($250,000) <u>Financial disclosures are available at sfethics.org.</u>

Id. Ex. 1. That disclosure, when printed in size 14-point font, takes up 100% of the most common and economical ads printed in Chinese language newspapers (so-called "ear" ads), 75 to 80% of a 5" by 5" ad, and 31 to 33% of a 5" by 10" ad. Id. ¶¶ 66–67. It occupies approximately 35% of a typical 14" by 22" horizontal window sign, id. ¶¶ 58, 61, and approximately 35 to 38% of one side of a typical 5.5" by 8.5" palm card, id. ¶¶ 52–53.

Yes on Prop B seeks a preliminary injunction "prohibiting defendant the City and County of San Francisco and its officers, agents, divisions, commissions, and all persons acting under or

3

1  in concert with it, from enforcing the spoken disclaimer rule in San Francisco Campaign &
2  Governmental Conduct Code Section 1.161(a)(5) and amendments to Section 1.161 imposed by
3  Proposition F." Mot. at 1.

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" that should only be awarded upon a clear showing that the plaintiff is entitled to such relief. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. See id. at 20. Alternatively, the moving party must demonstrate that "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," and that the other two Winter elements are met. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). The "[l]ikelihood of success on the merits is the most important Winter factor." Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (internal quotation marks omitted). It is Yes on Prop B's burden to establish each of the four Winter elements, but San Francisco's burden to demonstrate Proposition F's constitutionality. Klein v. City of San Clemente, 584 F.3d 1196, 1201 (9th Cir. 2009).

## III. DISCUSSION

Yes on Prop B presents two theories of Proposition F's constitutional infirmity: that the disclaimer requirements are so lengthy they impose an undue burden on political speech and that requiring Yes on Prop B to disclose its secondary contributors unconstitutionally forces it to associate with those entities and impermissibly chills political contributions. See Mot. at 1–2. This order evaluates the likelihood of success on each theory, before analyzing whether the standard for a facial challenge has been satisfied and discussing the other three Winter factors.

### A. Constitutional Standard

As a preliminary matter, the parties dispute the appropriate standard for evaluating Proposition F's constitutionality. Because "[d]isclaimer and disclosure requirements may burden

4

the ability to speak, but . . . do not prevent anyone from speaking," they are subject to "exacting scrutiny."[4] Citizens United v. FEC, 558 U.S. 310, 366 (2010). This standard "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." Id. at 366–67. "[T]he strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." Davis v. FEC, 554 U.S. 724, 744 (2008).

Yes on Prop B nonetheless contends the Court should apply strict scrutiny, because "the Supreme Court has avoided applying these standards in a mechanical manner, particularly when a regulation appears on its face to fit within on[e] category, but has broader First Amendment implications." Mot. at 10. Neither of the cases Yes on Prop B cites for this proposition is on point. Both involved laws that effectively penalized candidates who expended more than a threshold amount of personal funds, by raising contribution limits or providing public funds for their opponents. See Davis, 554 U.S. at 738–40; Ariz. Free Enter. Club's Freedom Club PAC v. Bennett, 564 U.S. 721, 736–37 (2011). The Court applied strict scrutiny to these schemes, because they constituted an "unprecedented penalty" on campaign expenditures. Davis, 554 U.S. at 739.

Yes on Prop B does not cite a case which employed this logic to subject disclosure or disclaimer requirements to strict scrutiny. Even if the logic of Davis and Bennett could be extended to the disclaimer and disclosure context, for the reasons explained below, most applications of Proposition F do not impose such "a special and significant burden" on First Amendment rights that strict scrutiny would apply. Cf. Davis, 554 U.S. at 739. The only possible exception is its application to smaller or shorter advertisements that are completely occupied by the required disclaimers. As explained below, that application of Proposition F is unconstitutional

---

[4] Before the Supreme Court clarified that disclaimer and disclosure requirements are subject to exacting scrutiny, some courts subjected these laws to strict scrutiny. See, e.g. Cal. Republican Party v. Fair Political Practices Comm'n, No. CIV-S-04-2144 FCD PAN, 2004 U.S. Dist. LEXIS 22160, at *13 (E.D. Cal. Oct. 27, 2004). This approach is no longer good law. See Human Life of Wash., Inc. v. Brumsickle, 624 F.3d 990, 1013 (9th Cir. 2010) ("[T]he Supreme Court has made clear that exacting scrutiny, not strict scrutiny, is applicable to campaign finance disclosure requirements.").

regardless of the standard of review. For the reasons explained above, the Court will subject all other applications of the law to exacting scrutiny.

### B. Burden on Speech

Yes on Prop B's first theory of Proposition F's constitutional infirmity is that the disclaimer requirements "are so long and cumbersome" that they leave no room for political advertising's political message. Mot. at 13–17. The merits of this argument depend to some extent on the type of ad. The smaller or shorter the ad, the greater the burden. This section therefore proceeds by considering two categories of Yes on Prop B's proposed advertisements: those in which the required disclaimers take up more than 40% of the ad and those in which the required disclaimers take up 40% or less of the ad.

#### 1. Yes on Prop B's proposed 5" by 5" newspaper advertisements, smaller "ear" advertisements, and digital/audio advertisements of 30 seconds or less.

San Francisco agrees that when Proposition F's disclaimers take up more than 40% of the space or run time of a given ad they impose an unconstitutional burden on political speech. Opp'n (dkt. 18) at 4. Both parties have called for the Court to enjoin Proposition F's application where its disclaimer requirements will occupy more than 40% of a given Yes on Prop B advertisement. Id. at 24; Mot. at 1. The Court agrees that such an injunction is necessary.

Yes on Prop B's required disclaimers consume 75 to 100% of 5" by 5" newspaper advertisements, smaller "ear" advertisements, and digital/audio advertisements 30 seconds or less in length. Muir Decl. ¶¶ 36, 67. Proposition F virtually forecloses the use of these ads, because the mandated disclaimers leave little or no room for the political message. This is especially troubling because the burden is greatest for some of the most cost-effective types of advertising. David Decl. ¶¶ 28–30. Perversely, a law intended to reveal the influence of money in politics may have the unintended result of severely hampering the political speech of underfunded committees. The First Amendment cannot tolerate a law that, as a practical matter, forecloses certain forms of political speech and requires Yes on Prop B to expend precious funds on more expensive

6

advertising or forgo its political expression altogether. Cf. Buckley v. Valeo, 424 U.S. 1, 17–19 (1976) ("substantial . . . restraints on the quantity and diversity of political speech" are unconstitutional). The burden Proposition F imposes on these forms of advertising is unconstitutional whether it is reviewed under strict or exacting scrutiny.

Because Yes on Prop B has shown a likelihood of success on the merits of this issue, it has also demonstrated that the other Winter factors weigh in favor of a preliminary injunction. First Amendment violations constitute irreparable harm and demonstrate that the balance of hardships tips in the plaintiff's favor. Am. Beverage Ass'n v. City & Cty. of San Francisco, 916 F.3d 749, 758 (9th Cir. 2019). There is also a strong public interest in avoiding constitutional violations. Id.

### 2. Yes on Prop B's other proposed advertisements.

Larger and longer advertisements present a different case, which the rest of this section evaluates under the exacting scrutiny framework.

#### a. Governmental interest.

The Ninth Circuit has recognized that in the referendum context, where "voters act as legislators, the government has a vital interest in providing the public with information about who is trying to sway its opinion." Brumsickle, 624 F.3d at 1017 (internal alterations and citations omitted). "Given the complex detail involved in ballot initiatives, and the sheer volume of relevant information confronting voters, voters cannot be expected to make such a determination on their own." Id. Disclaimer and disclosure requirements that help "voters . . . determine who is behind the advertisements seeking to shape their views" therefore serve a "sufficiently important" governmental interest. Id. at 1017–18.

Yes on Prop B argues that San Francisco has failed to offer any justification for the new formatting rules "[o]ther than boiler-plate statements about the need for more disclosure." Mot. at 17. It contends that without more specific arguments or a "factual record" demonstrating "why it is now necessary for disclaimers to be spoken at the beginning of audio and digital ads, and why print disclaimers must be so much bigger," San Francisco cannot demonstrate an important governmental interest. Id.; see also Reply (dkt. 22) at 6 ("The City has provided no evidence or

7

rationale as to why disclaimers on print ads had to change from 12-point font to 14-point font, or why an <u>entire</u> disclaimer must be spoken for all audio and video ads instead of just identifying the sponsor."). But "[t]he quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised." <u>Nixon v. Shrink Mo. Gov't PAC</u>, 528 U.S. 377, 391 (2000). It is hardly novel or implausible to suggest that the informational interest described above is better served by more noticeable, easier-to-read font or more obvious, difficult to ignore, and complete disclaimers.

### b. First Amendment burden.

The next question is whether this interest "reflect[s] the seriousness of the actual burden on First Amendment rights." <u>Davis</u>, 554 U.S. at 744. San Francisco argues it must, because the Supreme Court has upheld a four-second disclaimer requirement as applied to a ten-second advertisement. Opp'n at 8 (citing <u>Citizens United</u>, 558 U.S. at 368). San Francisco concludes that "the Supreme Court [has] recognized that disclaimers that take 40% of advertising space satisfy exacting scrutiny." <u>Id.</u>

The Court declines the invitation to establish a bright-line rule that disclaimer requirements are not unduly burdensome so long as they consume no more than 40% of a political advertisement. The burden imposed by a given disclaimer will vary depending on the type of disclaimer, relevant advertisement, and various other case-specific factors. For instance, the four-second disclaimer in <u>Citizens United</u> had to be displayed, not spoken. 558 U.S. at 366. It was accompanied by a spoken disclaimer that was considerably shorter than the one required by Proposition F. <u>Id.</u> Yes on Prop B suggests this disclaimer format is less burdensome than a spoken disclaimer lasting for a comparable percentage of the ad. Reply at 2. That may be true for some ads, but not for others. In any event, the Court is convinced that the extent of the burden on First Amendment activity will depend on facts other than the percentage of ad forfeited to a disclaimer. A bright-line, 40% rule would lead to absurd results. <u>Id.</u> at 6.

That being said, <u>Citizens United</u> does establish that a disclaimer may commandeer a prominent position in a political ad without offending the First Amendment. That is the case here.

8

With Proposition F's application to the smaller ads enjoined, its disclaimers will not take up more than approximately 35% of any of Yes on Prop B's proposed ads. David Decl. ¶¶ 32–33. That leaves almost two-thirds of the ad for Yes on Prop B's pro-Prop-B messaging. The Court finds that this space is sufficient to communicate Prop B's political message. See, e.g. Muir Decl. Ex. 1. While the burden imposed by the disclaimer requirements is not insignificant, it is not inappropriate given the important governmental interest at stake. Brumsickle, 624 F.3d at 1017–18. This is especially true because most of the disclaimer's length is attributable to its content, which is substantially related to San Francisco's informational interest. See supra Section C.1.

Yes on Prop B offers a mathematical formula of its own. It argues the disclaimer requirements must be unduly burdensome, because the Ninth Circuit has struck down a requirement that warnings about the dangers of sugar occupy 20% of printed ads for sugar-sweetened beverages. Mot. at 13–14 (citing Am. Beverage Assoc., 916 F.3d at 756). But American Beverage Association is distinguishable, because it applied a different standard to a different type of speech.

The Ninth Circuit evaluated the sugar warning under the Zauderer test, which applies to "required warnings on commercial products," and asks, inter alia, whether the mandatory disclaimer is "unjustified or unduly burdensome." Am. Beverage Assoc., 916 F.3d at 756. American Beverage Association concluded San Francisco had failed to meet its burden of showing that the sugar warning was not unjustified or unduly burdensome, because "the record here shows that a smaller warning—half the size—would accomplish Defendant's stated goals." Id. at 757. Specifically, a study in the record suggested that a smaller warning would still reduce consumption of sugary beverages and improve consumers' awareness of such beverages' dangers. Id. The Ninth Circuit acknowledged that in other circumstances, a more prominent disclaimer might be warranted. Id. ("To be clear, we do not hold that a warning occupying 10% of product labels or advertisements necessarily is valid, nor do we hold that a warning occupying more than 10% of product labels or advertisements necessarily is invalid."). There is no similar empirical evidence in the record here, and the fact that the content of the challenged disclaimer is a major factor contributing to its length suggests a smaller disclaimer would not be equally effective.

9

The applicable constitutional standard is another distinguishing factor. Exacting scrutiny, not the Zauderer test, applies in this case. Yes on Prop B oversimplifies when it argues that American Beverage Association necessarily controls the result here because political speech enjoys greater protection than commercial speech. Mot. at 14. It ignores the factual distinctions between these cases, and the fact that the political context raises concerns not present in a commercial speech case. The referendum context implicates the important governmental interest in informing voters about who is paying for political advertising. Brumsickle, 624 F.3d at 1017–18.

Finally, San Francisco has taken the position that Proposition F does not mandate disclaimers for live telephone calls. Opp'n at 2 n.2. Given that representation the Court need not decide whether the disclaimer requirements are constitutional when applied to this form of advertising.[5]

### C. Secondary Contributor Disclosure Requirements

Yes on Prop B also argues that the secondary contributor disclosure requirements are unconstitutional, regardless of the format they appear in.

#### 1. Governmental interest.

As explained above, the governmental interest in helping "voters . . . determine who is behind the advertisements seeking to shape their views" is "sufficiently important." Brumsickle, 624 F.3d at 1017–18.

Yes on Prop B argues that "the relationship between the secondary contributor and the ultimate speaker is far too attenuated" to demonstrate a substantial relation between the disclosure requirement and the informational interest. Mot. at 22. But "individuals and entities interested in funding election-related speech often join together in ad hoc organizations with creative but

---

[5] In any case, the Court agrees with San Francisco's interpretation of the applicable requirements. Yes on Prop B argues Proposition F applies to live phone calls because "[t]he City ordinance cross-references the Political Reform Act which, in turn, defines 'advertisement' broadly as 'any general or public communication that is authorized and paid for by a committee for the purpose of supporting or opposing . . . a ballot measure." Reply at 2 n.1 (citing Cal. Gov't Code § 84501(a)(1)). A phone call from a live volunteer to a specific voter is not a "general or public communication."

10

misleading names." ACLU v. Heller, 378 F.3d 979, 994 (9th Cir. 2004). As the Ninth Circuit has recognized, "reporting and disclosure requirements can expose the actual contributors to such groups and thereby provide useful information concerning the interests supporting or opposing a ballot proposition," when "simply supplying the name . . . of the organization . . . does not provide useful information." Id.

These observations explain the utility of the secondary contributor disclosures. If Yes on Prop B only revealed that it had received funding from the United Democratic Club of San Francisco, that would not be particularly revealing. The fact that the United Democratic Club of San Francisco received substantial funding from the San Francisco Association of Realtors and the Committee on Jobs Government Reform Fund is helpful to voters in understanding "the interests supporting" the Club, see id., and therefore "who is behind the advertisements seeking to shape their views." Brumsickle, 624 F.3d at 1017–18. The secondary contributor disclosure requirements effectuate the interests served by the primary disclosure requirements, by helping voters understand who the primary contributors actually are.

The persuasive precedent Yes on Prop B cites in support of its position is distinguishable. Citizens Union of New York v. Attorney General of New York, 408 F. Supp. 3d 478 (S.D.N.Y. 2019), struck down as unconstitutional a law that required 501(c)(3) non-profit organizations to disclose the identities of donors that gave more than $2,500 if the non-profit itself gave more than $2,500 to a 501(c)(4) organization engaged in lobbying. Id. at 504. The court concluded that "[t]he link between a 501(c)(3) donor and the content of lobbying communications by the 501(c)(4) is too attenuated to effectively advance any informational interest." Id. at 505. But this conclusion depended on the unique nature of a 501(c)(3), which "by definition cannot engage in substantial lobbying activity." Id. It made little sense to tie donors to lobbying activities because they made a donation to an organization that could not, by law, engage in substantial lobbying activity. Id. That is not the case here—none of the relevant parties are 501(c)(3)s.

Yes on Prop B also argues that the secondary contributor disclaimers are unnecessary, because other disclosure laws require that most of this information be made publicly available online. Mot. at 20–21. This argument proves too much. If it were correct, no disclaimer would

11

withstand constitutional muster if all it did was provide information that was already on the internet. But the Supreme Court has approved disclaimer requirements that were at least partially redundant of reporting requirements. Citizens United, 558 U.S. at 366.

True, the Ninth Circuit has suggested that because disclaimer requirements "affect the content of the communication itself" they are more constitutionally suspect than laws that "requir[e] the reporting of funds used to finance speech." Heller, 378 F.3d at 987. But it has also upheld disclaimer requirements for political advertising as an appropriate means of furthering the government's interest in informing voters "who or what entity is trying to persuade them to vote in a certain way." Yamada v. Snipes, 786 F.3d 1182, 1203 n.14 (9th Cir. 2015). And it has recognized that the voting public "cannot be expected to explore the myriad pressures to which they are regularly subjected" and may "render a decision based upon a thirty-second sound bite they hear the day before the election." Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1106 (9th Cir. 2003). The government may therefore constitutionally "provide[ ] its voters with a useful shorthand for evaluating the speaker behind the sound bite." Id. The secondary contributor disclaimers provide voters with the necessary information at the time they hear (or see) the "sound bite" and without having to independently "explore the myriad pressures to which they are regularly subjected." See id. That is why they further a sufficiently important governmental interest.

### 2. First Amendment burden.

Yes on Prop B offers two theories of the secondary contributor disclaimer requirement's burden on First Amendment rights. First, that the requirement infringes on the committee's associational rights, and second that it impermissibly chills political contributions.

#### a. Associational rights.

According to Yes on Prop B, the secondary contributor disclaimers are a form of unconstitutional forced association because they "requir[e] that plaintiffs display on the face of every political communication the names and contribution amounts of secondary contributors with whom they have not associated" and "force[ ] the Committee to credit these secondary

contributors as endorsers of that message, regardless of whether that is actually true." Mot. at 18. In support of this argument, Yes on Prop B cites cases like Janus v. American Federation of State, County, and Municipal Employees, 138 S. Ct. 2448 (2018), for the proposition that the First Amendment guarantees the right not to associate. Mot. at 19. But Janus and its ilk are distinguishable, because Yes on Prop B is not being forced to associate with anyone. It is not, for example, being forced to fund speech it disagrees with. Cf. Janus, 138 S. Ct. at 2459–60. What it is required to do is accurately report that it has chosen to associate, at least indirectly, with certain organizations and individuals by taking money from groups they support financially.

Yes on Prop B's argument reduces to a theory of forced association by way of confusion. Yes on Prop B thinks it is being forced to associate with its secondary contributors because the disclaimers will confuse voters into believing that Yes on Prop B is more closely associated with its secondary contributors than it actually is. See Mot. at 17 ("Prop. F requires that the Committee identify on the face of its political messages, individuals and entities that they have not associated with, information that will ultimately confuse and misinform the electorate."); see also id. at 21 ("[B]y requiring the names of secondary contributors to appear on the political communications of a third-party to whom they have not contributed, Prop. F implies to the voting public that those secondary contributors knew, approved, and directed their money to fund the third party's communication.").

Yes on Prop B's problem is that the Supreme Court has flatly rejected a virtually identical voter confusion theory of association. Washington State Grange v. Washington State Republican Party, 552 U.S. 442 (2008), upheld a Washington state law that dictated that elections for "partisan offices" should occur "in two stages: a primary and a general election." Id. at 447. Candidates declared their "party preference, or independent status" in the primary. Id. Political parties could not "prevent a candidate who [was] unaffiliated with, or even repugnant to, the party from designating it as his party of preference." Id. The top two vote-getters in the primary advanced to the general election, maintaining the party preference they declared at the primary stage. Id. at 447–48.

Washington's Republican Party challenged the law on the theory that it "burden[ed] their

13

associational rights because voters [would] assume that candidates on the general election ballot [were] the nominees of their preferred parties." Id. at 454. The Court held that relying "on the possibility that voters will be confused as to the meaning of the party preference designation" was "sheer speculation" and "the fatal flaw in [the Republican Party's] argument." Id. The Supreme Court concluded that its case law "reflect[ed] a greater faith in the ability of individual voters to inform themselves about campaign issues." Id. There was "simply no basis to presume that" voters would misunderstand the import of the party preference designation. Id. This was "especially true" because "it was the voters of Washington themselves, rather than their elected representatives, who enacted" the relevant law. Id. at 455.

So too here. There is simply no reason to presume San Francisco voters will misunderstand the import of the very disclaimers they voted to require. The only evidence Yes on Prop B posits to the contrary is a single sentence in Margaret Muir's declaration that "recipients of campaign communications perceive that a person listed as a funding source on that communication is associated with the message sought to be conveyed." Muir Decl. ¶ 18. Even assuming this statement is accurate and admissible, it does not establish Yes on Prop B's contention that voters will mistakenly believe the secondary contributors are more closely associated with the pro-Proposition B message than is true. Voters may accurately determine that secondary contributors are associated with Yes on Prop B because they financially support organizations that support Yes on Prop B. But, as the Supreme Court has recognized, there is simply no reason to believe voters will be deceived into believing that a closer association exists by the very disclaimers they voted to require.

Yes on Prop B relies on California Republican Party v. Fair Political Practices Commission as support for its voter-confusion theory of forced association, but that unpublished case is unpersuasive here for three reasons. First, the court in Fair Political Practices applied strict scrutiny, 2004 U.S. Dist. LEXIS 22160, at *13–14, which the Ninth Circuit has since determined "set[s] the bar too high" in cases concerning disclaimer and disclosure requirements, Brumsickle, 624 F.3d at 1013.

Second, Fair Political Practices is distinguishable. It considered a law that "required that

14

any committee paying for an advertisement supporting or opposing a ballot measure identify on the face of the advertisement the committee's two largest contributors of $50,000 or more." Fair Pol. Practices Comm'n, 2004 U.S. Dist. LEXIS 22160, at *3. The court enjoined application of that requirement to political party committees. Id. at *23. But that result rested on the unique nature of political parties. The court reasoned that it was unnecessary to disclose a political party's financial backers, because "[i]n the context of political parties, the true 'speaker' is the political party." Id. at *18. In contrast, the court recognized that "primarily formed committees" might be "ad hoc organizations with creative but misleading names." Id. (citing Heller, 378 F.3d at 994). Disclosing the top financial contributors of primarily formed committees could, therefore, "prove useful at identifying the true 'speaker,'" and thus further "a compelling interest in unveiling for the voters the true 'speakers' behind such an advertisement." Id.

It is true that the result in Fair Political Practices also rested on a theory of association by voter confusion akin to Yes on Prop B's. The court found it was "not difficult to imagine a situation in which the contributor will be identified as a major donor on an advertisement containing a political message with which the contributor does not agree." Id. at *19. But this logic also depended in part on the unique nature of political parties. The court noted that "[c]ontributions are made to political parties for many reasons, including agreement with a party's general philosophy, support of certain platform positions, or simply opposition to the competing party." Id. at *18–19. And in any event, Fair Political Practices is an unreported decision of another court which predates the Supreme Court's decision in Washington State Grange. To the extent Fair Political Practices and Washington State Grange conflict, the Supreme Court's decision must control.

### b. Chilling effect on donations.

Yes on Prop B also complains that the secondary contributor disclosure requirements chill political contributions. Mot. at 20. Its principal officer, Todd David, states that certain would-be contributors have declined to donate due to concerns about having their own contributor's names listed on the committee's advertising. See David Decl. ¶ 23–25. Even assuming this claim is true

15

and admissible, the Ninth Circuit has held that the possibility that "individuals who would prefer to remain anonymous [will be deterred] from contributing to a ballot measure committee" establishes only a "modest burden" on First Amendment rights. Family PAC v. McKenna, 685 F.3d 800, 806 (9th Cir. 2012) (survey showing that contributors may "think twice" about donating if it would mean publicly disclosing their names and addresses did not show that the disclosure law "actually and meaningfully deter[ed] contributors" and thus established only a "modest burden"). At most, Yes on Prop B's evidence establishes that the chilling effect on campaign contributions is a modest burden reasonably related to the important informational interest discussed above.

### D. Facial Challenge

Yes on Prop B seeks a preliminary injunction blocking all enforcement of Proposition F. Mot. at 1. Because this relief would "reach beyond the particular circumstances of these plaintiffs," Yes on Prop B must "satisfy [the] standards for a facial challenge." John Doe No. 1 v. Reed, 561 U.S. 186, 194 (2010). To do this, it must at least show that a "substantial number of [Proposition F's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Wash. State Grange, 552 U.S. at 450 n.6 (internal quotation marks omitted). Yes on Prop B's burden is heavy, because "[f]acial challenges are disfavored." Id. at 450.

Yes on Prop B has failed to meet its heavy burden. As discussed above, it has not even shown that Proposition F is unconstitutional as applied to all of Yes on Prop B's proposed advertising. It offers no evidence or argument that Proposition F is generally unconstitutional in its application to the numerous other advertising for and against ballot measures in San Francisco. Its arguments are tailored to its own disclosures (the content of which varies by committee) and advertising. See generally Mot. The injunction issued by this Order applies only to Proposition F's enforcement against Yes on Prop B.

Rather than addressing the standard for a facial challenge, Yes on Prop B argues that enjoining the law only as applied to its own advertisements will confuse other committees, chill speech, and lead to needless repeat litigation. Reply at 14–15. The risk of confusion and repeat

litigation is irrelevant to the standard for a facial challenge. See Wash. State Grange, 552 U.S. at 450 n.6. The possibility of a chilling effect is necessarily tied up in the merits and does not warrant a broader injunction for the reasons explained above.

Yes on Prop B also cites Citizens United to suggest that facial review is preferable to an as-applied challenge in these circumstances. Reply at 15. The Court's determination that facial review was appropriate in that case rested on its conclusion that "a statute which chills speech can and must be invalidated where its facial invalidity has been demonstrated." Citizens United, 558 U.S. at 336 (emphasis added). Therein lies the crucial distinction: Yes on Prop B has not demonstrated Proposition F's facial invalidity.

### E. Other Winter Factors

The "most important" Winter factor, likelihood of success on the merits, favors San Francisco. VidAngel, 869 F.3d at 856. Yes on Prop B's arguments that the other Winter factors weigh in its favor rely on its position that it has demonstrated a likelihood of success on the merits. See Mot. at 23–24. Yes on Prop B has therefore failed to demonstrate that any of the Winter factors weigh in favor of a preliminary injunction.

## IV. CONCLUSION

The City and County of San Francisco are enjoined from enforcing the disclaimer laws adopted through Proposition F against Yes on Prop B's proposed 5" by 5" newspaper advertisements, smaller "ear" advertisements, and spoken disclaimers on digital or audio advertisements of thirty seconds or less. Yes on Prop B's requested injunctive relief is otherwise denied.

**IT IS SO ORDERED.**

Dated: February 20, 2020

_____
CHARLES R. BREYER
United States District Judge

17